The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHERYL BAIR, | ) |
| Plaintiff, | ) Case No. 2:19-cv-00998 BJR |
| | ) |
| | ) PLAINTIFF'S OPPOSITION TO |
| vs. | ) SNOHOMISH COUNTY DEFENDANTS' |
| | ) MOTION FOR PARTIAL SUMMARY |
| SNOHOMISH COUNTY, et al., | ) JUDGMENT |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## I.     INTRODUCTION

Plaintiff Cheryl Bair is a 55-year-old grandmother and a resident of Snohomish County, who has suffered from bipolar disorder most of her adult life.  On July 14, 2017, she was arrested by a Washington state trooper and, following a blood draw, was taken to the Snohomish County Jail for a DUI after a minor fender-bender despite having registered a zero on a breathalyzer at the scene of the accident.  Shortly after the state trooper transferred her to the custody of staff at the jail, Bair was brutally attacked by at least six members of the jail staff.  During the attack, Bair's body was injured and several of her ribs were fractured. Due to the manner of the attack,

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 1
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

Bair was unable to identify all of the officers who were present during the incident or who was responsible for each of her injuries; but none of the as yet unidentified officers who were also present have reported the incident.  In fact, the entire jail staff, including administrative support, failed to report the incident.

Bair now claims that she was violently assaulted by several Snohomish County Jail officers and then denied medical treatment for her injuries, which included four fractured ribs, abrasions, and bruises all over her body, and that she was ignored due to her mental illness.

This matter is now before this Court on the motion for partial summary judgment of defendant Snohomish County and the individual officers.

## II.    STATEMENT OF FACTS

On July 14, 2017, plaintiff Cheryl Bair was driving in heavily congested, stop-and-go traffic on Interstate 5 when she was involved in a rear-end collision. Declaration of Cheryl Bair in Opposition to Snohomish County Defendants' Motion for Partial Summary Judgment ("Bair Dec."), ¶4; DUI Arrest Report Narrative ("DUI Arrest Report"), Exhibit A to Declaration of Darryl Parker in Opposition to Snohomish County Defendants' Motion for Partial Summary Judgment ("Parker Dec."). Bair was not injured as a result of this fender-bender, nor was her vehicle damaged. Bair Dec., ¶5.

As Bair and the driver of the other vehicle were exchanging telephone numbers and insurance information, Washington State Patrol trooper Willard Collier arrived at the scene at around 5:25 p.m.  DUI Arrest Report. Trooper Collier observed that Bair was talkative but lethargic and had "droopy" eyes and presumed she was intoxicated. Deposition of Cheryl Bair ("Bair Dep."), Exhibit B to Parker Dec., at 17:23-18:3; Bair Dec., ¶6; Deposition of Willard Collier ("Collier Dep."), Exhibit C to Parker Dec., at 10:3-6. Bair was wearing a capri pants and

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 2
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

a sweatshirt over her sleeveless top. Bair Dep. at 21:25-22:2; Bair Dec., ¶4.  Trooper Collier administered a breathalyzer test on Bair, which produced a reading of 0.00. Collier Dep. at 14:7-18; July 14, 2017 medical records of Cheryl Bair from Providence Regional Medical Center ("Providence medical records"), Exhibit D to Parker Dec., at 1; Bair Dec., ¶7. Bair was not under the influence but had difficulty standing upright due to a hip replacement and several knee surgeries. Bair Dep. at 19:17-20:4; Bair Dec., ¶6. Although Bair registered a zero on the portable breathalyzer test administered in the field, Collier nevertheless concluded that Bair was under the influence of a controlled substance, arrested her, and after securing a warrant, transported her to Providence Regional Medical Center in Everett to get her blood drawn. Collier Dep. at 19:13-22; Bair Dec., ¶¶7-8. At the hospital, Bair exhibited no signs that she was injured or intoxicated and remained alert at all times. Providence medical records, at 5-6; Bair Dep. at 28:1-9. Because Bair knew she was not injured, she did not wish to be examined by hospital staff. Bair Dep. at 29:3-10; Bair Dec., ¶7. Prior to getting her blood drawn, Bair removed her sweatshirt. Bair Dep. at 29:11-14; Bair Dec., ¶7. After Bair was cleared, Trooper Collier transported her to Snohomish County Jail at approximately 8:00 p.m.  Excerpts of Cheryl Bair's Full Patient History ("Bair's patient history"), Exhibit E to Parker Dec.; DUI Arrest Report, at 36.

Enroute to the jail, Trooper Collier alerted the Snohomish County Jail staff that Bair had a bad knee and hip. Collier Dep. at 35:24-36:7. Upon Bair's arrival at Snohomish County Jail, two female booking support officers, including Olyntia Sewell, told Bair to remove the colorful hair bands she was wearing as they were gang-affiliated colors. Bair Dec., ¶9; Bair Dep. at 32:15-25; Deposition of Olyntia Sewell ("Sewell Dep."), Exhibit F to Parker Dec., at 56:21-57:8. While Bair was attempting to remove her hair bands, Sewell and the other booking support officer screamed at Bair to get down on the ground, and when Bair was unable to quickly do so

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 3
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

due to the condition of her knee and hip, slammed her against the wall, and took her to the ground. Bair Dep. at 32:22-33:24; Bair Dec., ¶10; Collier Dep. at 28:17-29:2; DUI Arrest Report. Taylor Jones, Scott Lewis, Robert Ogawa, and Scott Warnken joined Sewell and the second booking support officer in the assault of Bair and forced her to the ground. Defendants have conceded that there is a factual issue as to the involvement and use of unreasonable force by defendants Jones, Lewis, Ogawa, and Warnken. ECF No. 64 at 2. Defendants also admit that no use-of-force report was completed regarding this assault. *Id.* None of the individual defendants were disciplined for failing to complete a use-of-force report.

Sewell and each of the aforementioned officers used unreasonable force, landing multiple blows on Bair's face, torso, arms, and lower body which resulted in fractures to her ribs. Bair Dep. at 33:8-17; Bair Dec., ¶¶10-13. The officers then dragged Bair to a cell and told her to remove her clothing and change into a suicide smock. Bair Dep. at 43:18-45:1; Bair Dec., ¶¶13-14. Bair's body was covered with purple and red bruises. Photographs of Cheryl Bair taken at Providence Hospital on July 16, 2017 ("Providence Hospital photos"), Exhibit G to Parker Dec.; Bair Dec., ¶16. Bair suffered painful injuries requiring medical attention but never received any medical treatment addressing them or medication for her bipolar disorder from the time she arrived at Snohomish County Jail until her release two days later. Bair Dec., ¶¶14-15.

Despite Bair's obvious physical injuries and her constant complaints of pain and emotional distress, none of the defendants did anything to assist her or to get her the medical attention that her injuries required. *Id.*; Bair Dep. at 144:11-13, 145:5-10. While in custody, Bair notified nursing and corrections staff on duty at the jail of her severe pain and injuries and that she needed help. Bair Dep. at 45:7-10, 50:5-15, 53:13-21; Bair Dec., ¶14. Bair also notified Jail staff that she was bipolar. Bair Dep. at 57:6-58:1; Bair Dec., ¶15.

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 4
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

1    Defendant Hamadi Sisawo, a registered nurse, conducted Bair's "Fit for Jail" evaluation

2    sometime after Bair's arrival at the jail. Fit for Jail form, Exhibit H to Parker Dec.; Deposition of

3    Hamadi Sisawo ("Sisawo Dep."), Exhibit I to Parker Dec., at 57:24-58:2. Whether Sisawo

4    conducted his evaluation of Bair before or after the assault is disputed, as the hand-written time

5    entry on the Fit for Jail form is unclear. The time appears to be approximately 10:00 p.m. but, in

6    Sisawo's computerized chart notes, he entered 8 p.m. for when he saw Bair at the booking door.

7    Bair's patient history at 36.  Bair's booking photo was taken the following evening, on July 15,

8    2017. Bair Dep. at 54:10-55:12; Bair Dec., ¶16; Sewell Dep. at 71:16-72:23. Bair's booking

9    photo shows bruising from the assault on the exposed portion of her arm under the sleeve of her

10   jail-issued garment. Booking photo of Cheryl Bair ("Bair Booking Photo"), Exhibit J to Parker

11   Dec. Sisawo completed the computerized medical intake screening form following Bair's assault

12   but failed to record any of her injuries. Bair's patient history, at 1, 4, 36-37. Aside from dressing

13   one abrasion on Bair's wrist, Sisawo did not treat her serious chest injuries and bruises or refer

14   her to the medical unit for further assessments, even though Bair complained to him of neck,

15   chest, and arm pain and told him that she could not breathe. *Id.* at 37; Sisawo Dep. at 40:24-41:2,

16   68:12-21; Bair Dep. at 50:5-15, 53:13-21.

17   At 10:12 p.m., defendant Scott Lewis authorized placing Bair on suicide watch as Bair

18   had made some suicidal statements. Bair Dep. at 45:2-6; Suicide Watch Log, Exhibit K to Parker

19   Dec. Jail personnel began observing Bair at ten-minute intervals and made entries in the Special

20   Watch Log accordingly. *Id.*

21   Although several corrections officers, including Jones, Lewis, Ogawa, Sewell, and

22   Warnken, participated in the Special Watch, no one reported to medical staff Bair's extensive

23

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 5
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

bruising and injuries. Bair sustained bruising on her face, as wells as scratches, bloody spots, and wounds throughout her body. *Id.*; Providence Hospital photos.

Upon her July 16, 2017 release from custody, Bair immediately went to Providence Regional Medical Center in Everett, where an examining physician documented the injuries she sustained from her assault at Snohomish county jail. Bair Dep. at 59:22-61:14; Bair Dec., ¶20; Declaration of Ardy Horton in Opposition to Snohomish County Defendants' Motion for Partial Summary Judgment ("Horton Dec."), ¶4. Medical records from Bair's July 16, 2017 Providence Hospital visit ("Providence July 16th medical records"), Exhibit L to Parker Dec. Staff at Providence contacted Dawson Assault Center, which dispatched technicians who documented Bair's condition and photographed her face, arms, and legs. July 16, 2017 Forensic Nurse Report ("Forensic Nurse Report"), Exhibit M to Parker Dec. Their photos show gashes, bruises, swelling, and dried blood on Bair's body. *Id.*; Providence Hospital photos. After the incident, Bair's mental health greatly deteriorated, including feeling suicidal to where she needed to be taken to the emergency room. Bair Dec., ¶21; Horton Dec., ¶6.

Additional facts are set out in the Argument and Authority section below.

## III.    ISSUES PRESENTED

1.      Whether defendants Jodi Martin and Olyntia Sewell participated in the assault of plaintiff Cheryl Bair.

2.      Whether Snohomish County defendants violated Bair's due process rights under the Fourteenth Amendment by failing to provide medical treatment for her serious injuries.

3.      Whether defendant Snohomish County is liable for the constitutional violations committed its employees.

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 6
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

4.      Whether defendant Snohomish County discriminated against Bair on the basis of her mental disability in violation of the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") by failing to provide her with adequate medical care.

5.      Whether defendants violated Bair's Fourteenth Amendment right to equal protection of the laws.

6.      Whether Bair properly brought her negligence claim against Snohomish County defendants.

## IV.      EVIDENCE RELIED UPON

1.      Declaration of Darryl Parker in Opposition to Snohomish County Defendants' Partial Motion for Summary Judgment.

2.      Declaration of Cheryl Bair in Opposition to Snohomish County Defendants' Partial Motion for Summary Judgment.

3.      Declaration of Ardy Horton in Opposition to Snohomish County Defendants' Partial Motion for Summary Judgment.

4.      Declaration of Alexis Telles in Opposition to Snohomish County Defendants' Partial Motion for Summary Judgment.

## V.      MOTION TO STRIKE

In order to move for summary judgment, the moving party must set forth facts that would be admissible at trial. Fed. R. Civ. P. 56(c)(4). When a party relies upon evidence that is inadmissible, such evidence can be stricken by the court. Fed. R. Civ. P. 56(c)(2); Local Civil Rule 7(g). Snohomish County defendants' motion relies heavily on inadmissible evidence.

This Court should strike as hearsay Exhibits D, F, G, H, and I to the Declaration of Katherine Bosch. Exhibit D should be stricken in its entirety as unauthenticated hearsay as

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 7
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

defense counsel Bosch does not have personal knowledge that its contents are the actual policies of Snohomish County Jail. ECF No. 65, Exhibit D.  Exhibit F is purportedly an activity log completed by a non-party and is offered in evidence to prove the truth of the activity reported— namely that there was a combative inmate in the booking area at 8:22 pm. Fed. R. Evid. 801(c)(2); ECF No. 65, Exhibit F.  Attorney Bosch does not have personal knowledge of the accuracy of the log as she did not complete it. Similarly, Exhibit G, which is a Fit for Jail evaluation, is also hearsay because attorney Bosch does not have personal knowledge that Nurse Hamadi Sisawo conducted the evaluation on Bair. Fed. R. Evid. 801(c)(2); ECF No. 65, Exhibit G. In addition, Exhibit H, which purportedly contains portions of computerized jail medical records, is hearsay because it contains writings from non-parties and is offered in evidence to prove the truth of the writings. Fed. R. Evid. 801(c)(2); ECF No. 65, Exhibit H. Exhibit H also contains irrelevant information from a later stay in jail. Fed. R. Evid. 801(c)(2); ECF No. 65, Exhibit H.  Finally, Exhibit I is hearsay as it purports to be a document from the Federal Bureau of Investigation and not from Snohomish County.  Fed. R. Evid. 801(c)(2); ECF No. 65, Exhibit I. It is also unclear from Exhibit I when Bair was fingerprinted.

The Court should also strike Exhibit B to the Declaration of Olyntia Sewell as it contains an irrelevant incident that has no bearing on the instant matter. ECF No. 68, Exhibit B.

## VI.     ARGUMENT AND AUTHORITY

### A.     Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure states: summary judgment "will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of demonstrating an

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 8
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

absence of evidence to support the non-movant's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Liberty Lobby*, 477 U.S. at 255. Furthermore, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying fact must also be viewed in the light most favorable to the party opposing the motion. *Valadingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is not appropriate. *Sankovitch v. Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

**B.    There Are Material Issues of Fact as to Whether Defendant Olyntia Sewell Participated in the Assault of Plaintiff Cheryl Bair**

When multiple forces operate to bring about a plaintiff's constitutional injuries, "plaintiffs may demonstrate that each defendant is a concurrent cause by showing that his or her conduct was a 'substantial factor in bringing the injury about.'" *Lippoldt v. Cole,* 468 F.3d 1204, 1219 (10th Cir. 2006) (quoting *Northington v. Marin*, 102 F.3d 1564, 1568-69) (internal bracketing omitted). In a concurrent causation case, "the burden of proof shifts to the defendants in that 'a tortfeasor who cannot prove the extent to which the harm resulted from other concurrent causes is liable for the whole harm' because multiple tortfeasors are jointly and severally liable." *Id.*; *Northington*, 102 F.3d at 1569 ("Persons who concurrently violate others' civil rights are jointly and severally liable for injuries that cannot be apportioned"). Additionally, "it is not essential that all persons who concurrently caused the harm be joined as

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 9
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

defendants." *Northington*, 102 F.3d at 1569 (citing *Restatement (Second) of Torts* § 433A, comment i, § 433B, comments c and d, and §§ 879-82).

While Bair concedes that there may not be sufficient evidence implicating defendant Jodi Martin in the assault of Bair on July 14 2017, a question of fact remains as to whether defendant Olyntia Sewell was present and involved in the assault. Bair saw two female officers during the assault, and she described one as "African American and younger." Bair Dep. at 34:24-35:7. The only officer who fits that description who was present at the Snohomish County Jail that day is Olyntia Sewell. Additionally, according to the sworn deposition testimony of Bair, the two female officers who participated in the July 14, 2017 assault were the *same officers* who took her booking photos on the following evening. Bair Dep. at 55:7-12. Bair saw the young African American female processing her fingerprints, who told Bair, when she was having difficulty, that she was "in training." Bair Dep. at 55:15-21. Sewell also admits that she was in training at the time and that she processed fingerprints. Sewell Dep. at 27:6-14, 45:24-46:3. In addition, Sewell's name appears on Bair's fingerprint card under "official taking fingerprints." Cheryl Bair's July 15, 2017 fingerprint card ("Bair fingerprint card"), Exhibit N to Parker Dec. That card indicates that Bair was fingerprinted on July 15, 2017. *Id.* Since Sewell was clearly the officer who took Bair's fingerprints the day after the July 14, 2017 assault of Bair, Bair's sworn testimony strongly indicates that Sewell was involved in the assault.

Although Sewell claims to have been working on the graveyard shift (from midnight to 8:00 a.m.) on July 15, 2017, it is possible that Sewell was present at the jail during the July 14, 2017 use-of-force incident on Bair. ECF No. 68, ¶ 3. In fact, Sewell's July 1-15, 2017 timesheet shows that she had worked overtime on that day, so Sewell could well have been at the jail earlier than her scheduled shift. Sewell's deposition testimony also allows for her presence at the

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 10
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

jail during the July 14, 2017 assault, as she states that her "days flexed" and she "may" not have

been working on July 14, 2017 because her "days flexed during that time because [she] was

training." Sewell Dep. at 27:4-14. Viewing the evidence in the light most favorable to Bair, there

exists a genuine issue of material fact as to whether Sewell participated in the assault of Bair on

the evening of July 14, 2017.

## C.   Defendants Violated Bair's Due Process Rights under the Fourteenth Amendment by Demonstrating Deliberate Indifference to Her Right to Adequate Medical Care

### 1.   Individual defendants were deliberately indifferent to Bair's serious medical needs

Pretrial detainees have a clearly established right to medical care under the Due Process

Clause of the Fourteenth Amendment. *Revere v. Massachusetts General Hospital*, 463 U.S. 239

(1983).  The Ninth Circuit recently held that "claims for violations of the right to adequate

medical care 'brought by pretrial detainees against individual defendants under the Fourteenth

Amendment' must be evaluated under an objective deliberate indifference standard." *Gordon v.

Cnty. of Orange*, 888 F.3d 1118 (9th Cir. 2018) (quoting *Castro v. Cnty. of L.A.*, 833 F.3d 1060,

1070 (9th Cir. 2016)). This standard requires a showing that: (1) the defendant made an

intentional decision regarding the plaintiff's confinement conditions; (2) those conditions put the

plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable

available measures to reduce that risk, even though a reasonable official in the same

circumstances would have appreciated the high degree of risk involved; and (4) by not taking

such measures, the defendant caused the plaintiff's injuries.  *Gordon*, 888 F.3d. at 1125.

After their violent assault of Bair, individual defendant officers had reason to know that

Bair needed immediate medical care, but they chose to drag her into a cell immediately

afterwards. Bair Dep. at 42:6-14; Bair Dec., ¶13. Bair's ribs became fractured during the attack,

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 11
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

and she had multiple scrapes and abrasions all over her body, with large bruises forming. Providence Hospital photos. Defendants would have been able to see these injuries because they made Bair strip naked to change into a suicide smock following their assault. Bair Dep. at 43:18-45:1. According to plaintiff's retained expert Alexis Telles, RN, MSN, who has been a practicing nurse for 14 years, the suicide smock would have allowed for direct observation of many of the areas of injury. Declaration of Alexis Telles ("Telles Dec."), ¶13; Alexis Telles' curriculum vitae ("Telles CV"), Exhibit A to Telles Dec.;  Alexis Telles' expert report ("Telles report"), Exhibit B to Telles Dec., at 15. Some bruises are visible in Bair's booking photo where she is wearing a jail-issued uniform, which she had to change into from her suicide smock, allowing defendants another opportunity to see her injuries. *Id*.; Bair Booking Photo. Bair also complained of her injuries several times to both Nurse Sisawo and to the jail guards observing her, contrary to Snohomish County defendants' misleading references to Bair's deposition testimony. Bair Dep. at 52:16-21. Defendants Jones (Personnel No. 6313), Lewis (Personnel No. 6255), Ogawa (Personnel No. 6160), and Warnken (Personnel No. 6305) were among the guards who observed Bair during welfare checks as their personnel numbers or names appear on both her suicide watch log and withdrawal watch log. Suicide Watch Log; 2017 performance evaluations for defendants Taylor Jones, Scott Lewis, Robert Ogawa, and Scott Warnken ("2017 Performance Evaluations") Exhibit O to Parker Dec.; Withdrawal watch log for Cheryl Bair from July 14, 2017 ("Withdrawal Watch Log"), Exhibit P to Parker Dec. These defendants made an intentional decision not to provide Bair immediate medical care when she informed them of her injuries.

Such conditions put Bair at a substantial risk of suffering serious harm. According to her retained medical expert Forensic Nurse Telles, without medical treatment, Bair's fractured ribs could have resulted in a collapsed lung and bleeding in the chest cavity, and without her

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 12
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

medication for her bipolar disorder, her mental state was extremely precarious, evidenced by the fact that she felt suicidal and was later placed in a suicide watch cell. Telles Dec., ¶10; Telles report, at 14. Defendants could have immediately summoned medical care for Bair after observing her severe injuries to reduce the risk of her experiencing further pain and injuries. They could have also taken her to a hospital for urgent care from the moment they heard her complaints and observed her visible injuries. Doing so would have been a reasonable available measure, and a reasonable official in the same circumstances would have been aware of the risks of not availing her of medical care. By not providing Bair with adequate medical care soon after the assault, defendants forced her to endure great pain and suffering for the next few months as well as increased psychological and emotional distress. Horton Dec., ¶6. Had defendants promptly summoned medical care, the length of time Bair experienced suffering would have been significantly shortened. *Horton v. City of Santa Maria*, 915 F.3d 592, 607 (9th Cir. 2019).

## 2. Snohomish County's municipal liability

The Ninth Circuit has acknowledged that "constitutional deprivations may occur 'not…as a result of actions of the individual officers, but as a result of the collective inaction' of the municipal defendant." *Horton v. City of Santa Maria*, 915 F.3d 592, 604 (9th Cir. 2019) (quoting *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002)). Thus, even if no individual defendant is held liable for violating Bair's constitutional rights, defendant Snohomish County may still be held liable.

A municipality can be shown to have inflicted a constitutional injury through at least two routes. *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). Under the first route, a municipality can be liable under §1983 if a plaintiff shows

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 13
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

that it violated someone's rights or instructed its employees to do so. *Id.* (citing to *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 689 (1978)). A plaintiff can accomplish this by proving that the municipality acted with "the state of mind required to prove the underlying violation", perhaps by showing that the municipality has a policy that leads to constitutional violations. *Id.* (quoting *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 405 (1994)).

Under a second route to municipal liability, a plaintiff may show that through its omissions, the municipality is responsible for a constitutional violation committed by its employee(s), even if its policies are facially constitutional, it did not direct the employee to take the unconstitutional action, and it did not have the state of mind required to prove the violation. *Id.* at 1186 (citing to *City of Canton v. Harris,* 489 U.S. 378, 387-89 (1989)). However, a plaintiff must then "show that the municipality's deliberate indifference led to its omission and that omission caused the employee to commit the constitutional violation." *Id.* (citing to *City of Canton,* 489 U.S. at 387). In proving deliberate indifference, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Id.* (citing to *Farmer v. Brennan,* 511 U.S. 825, 841 (1994)).

There are several deficiencies in Snohomish County's jail policies that pave the way to constitutional violations. First, the County's Use of Force policy does not indicate which personnel should assess the prisoner's need for medical treatment following a use of force and ensure that they receive the appropriate medical aid necessary to ensure their safety, enabling non-medical and unqualified personnel to make such assessments. Snohomish County Corrections Use of Force policy, Exhibit Q to Parker Dec. The Use of Force policy is also only a general policy applying to deputies out in the field. Snohomish County has no policies for the jail

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 14
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

1  itself that govern the use of force leading to the constitutional violations. Finally, the number of

2  officers who inflicted force and did not report it nor examine Bair for injuries or refer her for

3  additional medical treatment is further evidence that the County itself caused the violation,

4  particularly since the County did not discipline any of the officers for failing to complete a use-

5  of-force report which is required after any use of force. Sewell Dep. at 46:21-47:3.

6       The Obtaining Medical Review of Use of Force policy allows non-medical staff

7  members, including those employing the use of force, to assess the prisoner for injuries after a

8  use-of-force incident "if a medical emergency does not appear to exist." Snohomish County

9  Corrections' POL-746 Obtaining Medical Review of Use of Force policy, Exhibit R to Parker

10  Dec. This policy, along with the Use of Force policy, leads unqualified individuals to determine

11  that a seriously injured prisoner is not actually injured at all, resulting in inadequate medical care

12  in violation of the Fourteenth Amendment.

13       The County's Defining Medical Emergency policy includes a highly lacking and

14  subjective list of conditions that are considered medical emergencies requiring immediate

15  medical attention. This list includes "severe pain (abdominal)", "acute chest pain", and "obvious

16  severe fracture". Snohomish County Corrections' POL-2511 Defining Medical Emergency

17  policy, Exhibit S to Parker Dec. This policy, combined with the Use of Force guidelines and

18  Obtaining Medical Review of Use of Force policy, entrusts non-medical staff and jail officials to

19  determine whether the inmate has an "obvious" fracture even though they are not trained to

20  assess what is "obvious". If they do not believe anything to be obvious or simply observe

21  lacerations, medical attention is required within 8 hours, which is plenty of time for even more

22  severe complications to arise. Furthermore, when Bair complained of neck and chest pain, Nurse

23

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 15
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

Sisawo allegedly felt that Bair was only complaining of "general body aches" in his subjective interpretation of the pain she reported. *Id.*; Bair's patient history, at 36.

Finally, the Holding Inmates in the Booking Area policy directs jail officers to make visual checks on every occupied holding area at least every 30 minutes but provides no instruction on what to do when inmates complain of medical issues. Snohomish County Corrections' PRO-810F Holding Inmates in the Booking Area policy, Exhibit T to Parker Dec. Thus, the nurse and officers who checked on Bair in the holding area felt no need to inform medical staff and take appropriate action in response to her complaints of pain.

To find Snohomish County liable due to its deliberate indifference under *Farmer,* it must have: (1) a policy that posed a substantial risk of serious harm to Bair; and (2) known that its policy posed this risk. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). The aforementioned policies enabled the jail staff to avoid providing Bair with adequate medical care in response to her injuries from their use of force. Specifically, the Holding Inmates in the Booking Area policy does not indicate that jail staff should act on medical information, including observations of severe injuries, and complaints from inmates. In *Gibson v. County of Washoe,* where a similar policy did not suggest that jail medical staff should act on detainees' prescription medication information, the Ninth Circuit stated that a jury could find that such an omission "was sufficiently likely to result in the violation of a detainee's right to medical care" and that "the County was deliberately indifferent to these needs." *Gibson,* 290 F.3d at 1195.

Snohomish County's jail policies should require all jail staff to take action to provide treatment to detainees who make medical complaints or otherwise demonstrate signs of having a medical issue in order to fulfill their right to medical care. Similarly, the policies allowing non-medical jail staff to make decisions regarding the nature of an inmate's injuries following a use-

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 16
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

of-force incident are likely to lead to violations of a detainee's right to medical care. Here, they deprived Bair of receiving immediate emergency medical care following a brutal assault. Snohomish County knew or should have known that such lacking policies posed a serious risk to detainee health. In their Use of Force policy and Obtaining Medical Review of Use of Force policy, the policy-makers demonstrate awareness that detainees may be injured and require medical attention after uses of force and that, without medical attention, medical risks and constitutional violations may occur. Yet, the County does not instruct its staff to do the bare minimum and respond appropriately to medical complaints and/or obvious injuries of detainees. Thus, a jury could find that, through its policies, Snohomish County was deliberately indifferent in not providing Bair with adequate medical care, in direct violation of her constitutional rights.

Finally, the lack of a use-of-force report following the assault of Bair indicates that there may be a practice of not filling out such reports when jail officials use force against detainees. Municipalities may be held liable under §1983 for an unconstitutional custom or practice. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Defendant Sewell's testimony points to the possibility that Snohomish County Jail staff are not consistent in completing use-of-force reports. On one hand, Sewell testified that placing someone in a restraint chair would trigger the completion of a use-of-force report. Sewell Dep. 44:13-45:9. Additionally, if someone was physically combative when they arrived at the jail and, as a result, was restrained, taken down to the ground, or made to do something against their will, a use-of-force report would need to be filled out. Sewell Dep. 46:13-47:3. On the other hand, Sewell also testified that, if someone is physically restrained, she does not have to complete a use-of-force report. Sewell Dep. at 47:4-48:20. Given Sewell's own uncertainty about when to complete a use-of-force report form, there is a question of fact as to whether Snohomish County Jail has a practice of not completing such

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 17
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

reports. Furthermore, since none of the *six* Snohomish County employees directly involved in the assault of Bair, nor any person who witnessed the assault, filled out a use-of-force report or provided medical aid to Bair or was disciplined for not doing so, it can be inferred that there is a custom and practice of not reporting uses of force or providing aid when an arrestee is injured.

There are several indications that Snohomish County is liable for constitutional deprivations, whether that may be from deficient policies or suspect practices. A jury should be permitted to determine whether these indications are legitimate and to point to Snohomish County's municipal liability for Bair's injuries.

**D.    Defendant Snohomish County Discriminated Against Bair on the Basis of Her Mental Disability in Denying her Medical Treatment in Violation of the ADA and Rehabilitation Act**

To state a claim under Title II of the Americans with Disabilities Act ("ADA"), a plaintiff must show that four elements have been satisfied: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of a public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018) (quoting *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014)). Similarly, to show a claim under the Rehabilitation Act, a plaintiff must establish that: (1) they are an individual with a disability; (2) they are otherwise qualified to receive the benefit; (3) they were denied the benefits of the program solely by reason of their disability; and (4) the program receives federal financial assistance. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). Since the standards under the ADA and Rehabilitation Act are nearly the

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 18
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

1   same, they can be treated identically. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72

2   (2nd Cir. 2016).

3        It has been clearly established that medical care is a service, program, or activity of a

4   public entity, including jails and prisons, under the ADA. *Pennsylvania Dep't of Corr. v. Yeskey*,

5   524 U.S. 206, 210 (1998) ("Modern prisons provide inmates with many recreational 'activities,'

6   medical 'services,' and educational and vocational 'programs,' all of which at least theoretically

7   'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from

8   participation in')"); 42 U.S.C. § 12131(1) (ADA's definition of "public entity" include state and

9   local government agencies). The Supreme Court has stated that "it is quite plausible that the

10  alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related

11  needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison

12  programs constituted 'exclu[sion] from participation in or ... deni[al of] the benefits of' the

13  prison's 'services, programs, or activities.'" *United States v. Georgia*, 546 U.S. 151, 157 (2006)

14  (quoting the ADA). Thus, denying disabled inmates medical care violates the ADA and

15  Rehabilitation Act if the denial is because of their disability.

16       The ADA was originally enacted on July 26, 1990. Americans with Disabilities Act of

17  1990, Pub. L. No. 101-336, 104 Stat. 327. The Rehabilitation Act was originally enacted on

18  September 26, 1973. But Congress amended both of these acts after December 1, 1990. On

19  September 25, 2008, Congress enacted the ADA Amendments Act of 2008 ("ADAAA"), Pub. L.

20  No. 110-325, 122 Stat. 3553. This Act revised the definition of "disability" for both the ADA

21  and the Rehabilitation Act. See *id*. § 4, 122 Stat. at 3555; *id*. § 7, 122 Stat. at 3558 (redefining a

22  person with a disability for Rehabilitation Act purposes in terms of the revised definition of

23  disability for the amended ADA).

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 19
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

1    The term "mental impairment" is generally construed broadly to encompass "any mental

2  or psychological disorder," including "emotional or mental illness." § 1630.2(h); see also EEOC

3  *Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities*,

4  1997 WL 34622315, at *2, § 1 ("Examples of 'emotional or mental illnesses' include major

5  depression, bipolar disorder, anxiety disorders (which include panic disorder, obsessive

6  compulsive disorder, and post-traumatic stress disorder), schizophrenia, and personality

7  disorders."). Whether a mental impairment "substantially limits" a major life activity must be

8  assessed "in favor of expansive coverage," and construed broadly "to the maximum extent

9  permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1)(i). Congress reiterated the

10 intended expansiveness of ADA's applicability in 2008 when it adopted the ADA Amendments

11 Act ("ADAAA"), which emphasized that the ADA was intended to "provide a clear and

12 comprehensive national mandate for the elimination of discrimination against individuals with

13 disabilities," and sought to reinstate the "broad scope of protection" Congress intended be

14 available under the Act. Pub. L. No. 110–325, §§ 2(a)(1), (b)(1), 122 Stat. 3553.

15    Bair is an individual with a mental health disability; she has been diagnosed with bipolar

16 disorder and takes medication for it daily. *Gambini v. Total Renal*, 486 F.3d 1087, 1094-95 (9th

17 Cir. 2007) (where bipolar disorder is considered a disability). She was qualified to receive

18 medical services at Snohomish County Jail, but she was denied those services. *Bonner v. Lewis*,

19 857 F.2d 559, 563 (9th Cir. 1988) (where a disabled inmate is qualified to receive medical

20 services). There is a question of fact as to whether defendant Snohomish County denied her

21 medical services because of her disability. Bair told officers at the jail that she was bipolar

22 because she wanted to take her bipolar medication. Bair Dep. at 57:6-58:1. Jail staff also knew or

23 should have known that Bair had a mental illness as they knew that Bair was taking Clonazepam,

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 20
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

a drug used to treat seizures, anxiety, and panic disorders. Sisawo Dep. at 35:5-7. Defendant Sisawo specifically wrote on Bair's Fit for Jail form that she had taken Clonazepam. Parker Dec., Fit for Jail form. Jail staff believed that Bair was detoxing from benzodiazepine use because of the Clonazepam use. Sisawo Dep. at 75:25-76:14. Snohomish County had even more reason to believe that Bair had some form of mental disability because she conveyed to staff that she was suicidal, after which she was placed in a suicide watch cell. Additionally, as of 12:40 pm on July 15, staff had access to a list of Bair's medications from her pharmacy at Walgreen's. Bair's patient history at 30, 37. The list included antidepressants, antipsychotics, and anti-anxiety medications such as Clonazepam, Venlafaxine, and Hydroxyzine. *Id.* Jail staff would therefore have been able to ascertain that Bair suffered from mental illnesses. Thus, there is sufficient reason to believe that, because of the suspicion that Bair had a mental disability, defendant Snohomish County excluded her from medical service after she complained of severe pain, attributing her complaints to her mental disability and withdrawal from her medication.

Furthermore, because Snohomish County with deliberate indifference failed to provide Bair with meaningful access to medical services, it is liable for damages under Title II of the ADA and the Rehabilitation Act. *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). A plaintiff pursuing damages under either of these federal laws must prove intentional discrimination by the "deliberate indifference" standard, which "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon…the likelihood." *Duvall,* 260 F.3d at 1138. It is clearly established that pretrial detainees have a federally protected right to medical care and attention under the Due Process Clause of the Fourteenth Amendment. *Revere v. Massachusetts General Hospital*, 463 U.S. 239 (1983). By observing Bair's severe injuries, hearing her complaints of serious pain, and still not providing

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 21
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

Bair with the immediate medical attention that she obviously needed, Snohomish County must have known that a harm to this federally protected right to medical care was likely. However, it failed to act upon that likelihood, and Bair was only able to receive medical care after she was released from Snohomish County Jail. Hence, Snohomish County is liable for damages under the ADA and Rehabilitation Act by acting with deliberate indifference in not ensuring immediate medical attention for Bair's injuries.

**E.      Violation of Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Under the Equal Protection Clause, "mere negative attitudes, or fear, unsubstantiated by factors which are properly cognizable…are not permissible bases" for imposing special restrictions on disabled people. *Id.* at 448. To establish a *prima facie* case of discrimination, a plaintiff must show that she is a member of a protected class, that she is otherwise similarly situated to members of the unprotected class, and that she was treated differently from members of the unprotected class. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005).

Defendants, acting under the color of state law as Snohomish County employees, violated Bair's constitutional right to equal protection by discriminating against her on the basis of her disability. Since she has been diagnosed with bipolar disorder and other mental disabilities, Bair is a member of a protected class. When she became a pretrial detainee at the Snohomish County Jail, she was otherwise similarly situated to non-disabled pretrial detainees. However, she was treated differently from them as she was not taken seriously when she complained about her injuries and not offered adequate medical care for them.

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 22
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

Individual defendants denied Bair equal protection of the law when they failed to fill out a use-of-force report regarding Bair's assault at booking and failed to notify a nurse that Bair was seriously injured after the assault. If there is a use of force, jail officials must complete a use-of-force report. Sewell Dep. at 46:21-47:3. Bair also had several cuts on her feet and wrist after the assault, and Sewell typically reports cuts and open wounds to a nurse if she observes any during booking. Sewell Dep. at 34:3-24. It is improbable that defendants simply did not take notice of Bair's injuries as she changed clothes and was naked at least twice—first, when she changed from her civilian clothes to the suicide smock, and then when she changed from the suicide smock to the jail uniform for her booking photo. Bair Dep. at 43:18-45:1. Bair's bruising and injuries were clearly visible, as evident in her booking photo. Bair Booking Photo. Yet defendants did not offer her the substantive medical treatment she needed for all of her injuries. Since Bair informed jail officers that she was bipolar and was exhibiting behaviors consistent with symptoms of a mental illness, individual defendant officers likely had knowledge that she had a mental disability. The officers had even more reason to believe that Bair had some form of mental disability because she expressed that she was suicidal, after which she was placed in a suicide watch cell. These officers did not take Bair as seriously as they would have a non-disabled detainee and thus did not find it necessary to fill out a use-of-force report or notify a nurse for immediate emergency medical attention as Bair was perceivably having a manic episode. Plaintiff's retained expert nurse Alexis Telles confirms that Bair was displaying symptoms consistent with mania at the jail on July 14, 2017. Telles Dec., ¶5; Telles report, at 9.

Claims of disability discrimination under the Equal Protection Clause are evaluated using the rational basis test. *Does 1–5 v. Chandler,* 83 F.3d 1150, 1155 (9th Cir.1996) *(*citing *City of Cleburne,* 473 U.S. at 440)*. Accordingly, disabled pretrial detainees must be treated equally

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 23
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

unless unequal treatment bears a rational relation to a legitimate penal or legislative interest. *Id*. Here, defendants' failure to provide immediate medical care to Bair and to follow the appropriate protocol after using force on a detainee has no rational relation to any conceivable legitimate penal interest. Defendants thus violated Bair's right to be equally protected by the law by grossly mistreating her on the basis of her disability.

**F.      Bair Properly Brought a State Law Negligence Claim against Snohomish County Defendants and Complied with Statutory Claim Filing Requirements**

Snohomish County defendants attempt to dismiss Bair's negligence claim on procedural grounds, asserting that by bringing a lawsuit and amending the complaint to add state law claims once sixty calendar days have elapsed following the filing of a Claim for Damages form, Bair has failed to meet the requirements of the claim filing statute, Chapter 4.96 RCW, and is thus barred from pursuing her negligence claim. However, defendants misinterpret the statute and overlook the procedural history of this action. Bair amended her original complaint, which contained some state claims but no negligence claim, to eliminate all state claims for damages because no tort claim had been filed. At that time, the case proceeded solely on the basis of federal claims. A tort claim for negligence was filed on July 26, 2019 and was denied by operation of law on September 26, 2019 when sixty days had passed. At that point, Bair amended her complaint to add her now-ripe state negligence claim, arising from the same set of facts as her 42 U.S.C. §1983 claims. Plaintiff therefore complied with the statutory claim filing requirements and is not barred from pursuing her negligence claim.

None of the cases that defendants point to indicate that a plaintiff cannot file a suit based solely on federal claims prior to filing a statutory tort claim for damages and subsequently add a state claim after properly filing a claim for damages.  Per the Supremacy Clause of the

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 24
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

Constitution, an action comprised only of federal claims is not subject to the Washington state claim filing requirements of Chapter 4.96 RCW. *See* RCW 4.96.020(4) ("No action *subject to the claim filing requirements* . . . shall be commenced against any local government entity . . until sixty calendar days have elapsed after the claim has first been presented to the agent of the governing body thereof. . . .") (emphasis added). The procedural requirements of Chapter 4.96 RCW have no effect on a plaintiff's federal claims, so it is perfectly permissible for a plaintiff to file and proceed with a lawsuit based solely on federal claims, file a Claim for Damages form with the state government for new state claims, and amend her complaint to add the state claims after allowing the state government sixty days to evaluate and settle those new claims. Bair gave the state government the opportunity to assess her state claim before engaging in litigation on that claim, and once that opportunity passed, as a matter of law, she properly added her state claim to her complaint. This Court should thus reject defendants' flawed attempt to dismiss Bair's negligence claim.

## VII.   CONCLUSION

For the foregoing reasons, plaintiff Cheryl Bar asks this Court to deny defendants' motion for partial summary judgment.

DATED this 19th day of October, 2020 at Seattle, Washington.

CIVIL RIGHTS JUSTICE CENTER, PLLC

*s/ Darryl Parker*_____
**Darryl Parker,** WSBA #30770
*Attorney for Plaintiff*

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 25
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

**CERTIFICATE OF SERVICE**

I, Krithi Basu, under penalty of perjury under the laws of the State of Washington, declare as follows:

I am a legal assistant at the Civil Rights Justice Center, PLLC, and am over the age of 18. On the date and in the manner indicated below, I caused the foregoing PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT and this CERTIFICATE OF SERVICE to be electronically filed with the Clerk of the Court using CM/ECF system which will send notification of the filing to all counsel of record.

DATED this 19th day of October, 2020 at Seattle, Washington.

*s/ Krithi Basu*_____
**Krithi Basu,** Legal Assistant

PLAINTIFF'S OPPOSITION TO SNOHOMISH COUNTY
DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT - 26
Case No. 2:19-cv-00998 BJR