The Honorable Barbara J. Rothstein

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF WASHINGTON
9                             AT SEATTLE

10  CHERYL BAIR,                            )
                                            )  Case No. 2:19-cv-00998 BJR
11                        Plaintiff,        )
                                            )  PLAINTIFF'S MOTION FOR
12          vs.                             )  PARTIAL SUMMARY JUDGMENT
                                            )  AGAINST DEFENDANT SISAWO
13  SNOHOMISH COUNTY, et al.,               )
                                            )  **NOTE ON MOTION CALENDAR:**
14                        Defendants.       )  **December 18, 2020**
                                            )
15  _____)

16                      **I.    INTRODUCTION**

17          Plaintiff Cheryl Bair is a citizen of Everett, Washington who has suffered deprivations of

18  her civil and constitutional rights due to the discrimination, deliberate indifference, and negligent

19  conduct of defendant Hamadi Sisawo while he was working at the Snohomish County Jail. It is

20  undisputed that Bair suffers from physical and mental illnesses that affect her mental capabilities

21  and physical mobility. It is also undisputed that as a matter of statute Registered Nurses are

22  required to provide a fundamental level of care and be advocates for their patients. *See* WAC

23  246-840-700 Standards of nursing conduct or practice. The undisputed facts of this case show

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT          **Civil Rights Justice Center, PLLC**
AGAINST DEFENDANT SISAWO **- 1**                         2150 N 107th Street, Suite 520
Case No. 2:19-cv-00998 BJR                               Seattle, Washington 98133
                                                         (206) 557-7719 / Fax: (206) 659-0183

that Hamadi Sisawo ignored Bair, failed to conduct a basic physical examination of her, and despite her being on suicide watch, did not advocate for her.

## II.   STATEMENT OF FACTS

On July 14, 2017, plaintiff Cheryl Bair was driving in heavily congested, stop-and-go traffic on Interstate 5 when she was involved in a rear-end collision. Second Declaration of Cheryl Bair ("Second Bair Dec."), ¶4; DUI Arrest Report Narrative ("DUI Arrest Report"), Exhibit A in ECF No. 77-1. Bair was not injured as a result of this fender-bender, nor was her vehicle damaged. Second Bair Dec., ¶5.

As Bair and the driver of the other vehicle were exchanging telephone numbers and insurance information, Washington State Patrol trooper Willard Collier arrived at the scene at around 5:25 p.m.  DUI Arrest Report. Trooper Collier observed that Bair was talkative but lethargic and had "droopy" eyes and presumed she was intoxicated. Deposition of Cheryl Bair ("Bair Dep."), Exhibit B in ECF No. 77-1, at 17:23-18:3; Second Bair Dec., ¶6; Deposition of Willard Collier ("Collier Dep."), Exhibit C in ECF No. 77-1, at 10:3-6. Bair was wearing capri pants and a sweatshirt over her sleeveless top. Bair Dep. at 21:25-22:2; Second Bair Dec., ¶4. Trooper Collier administered a breathalyzer test on Bair, which produced a reading of 0.00. Collier Dep. at 14:7-18; July 14, 2017 medical records of Cheryl Bair from Providence Regional Medical Center ("Providence medical records"), Exhibit D in ECF No. 77-1, at 1; Second Bair Dec., ¶7. Bair was not under the influence but had difficulty standing upright due to a hip replacement and several knee surgeries. Bair Dep. at 19:17-20:4; Second Bair Dec., ¶6. Although Bair registered a zero on the portable breathalyzer test administered in the field, Collier nevertheless concluded that Bair was under the influence of a controlled substance, arrested her, and after securing a warrant, transported her to Providence Regional Medical Center in Everett to

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT SISAWO - 2
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

get her blood drawn. Collier Dep. at 19:13-22; Second Bair Dec., ¶7. At the hospital, Bair

exhibited no signs that she was injured or intoxicated and remained alert at all times. Providence

medical records, at 5-6; Bair Dep. at 28:1-9. Because Bair knew she was not injured, she did not

wish to be examined by hospital staff. Bair Dep. at 29:3-10; Second Bair Dec., ¶7. Prior to

getting her blood drawn, Bair removed her sweatshirt. Bair Dep. at 29:11-14; Second Bair Dec.,

¶7. After Bair was cleared, Trooper Collier transported her to Snohomish County Jail at

approximately 8:00 p.m.  Excerpts of Cheryl Bair's Full Patient History ("Bair's patient

history"), Exhibit E in ECF No. 77-1, at 36; Second Bair Dec., ¶8; DUI Arrest Report.

En route to the jail, Trooper Collier alerted the Snohomish County Jail staff that Bair had

a bad knee and hip. Collier Dep. at 35:24-36:9. Upon Bair's arrival at Snohomish County Jail,

two female booking support officers, including Olyntia Sewell, told Bair to remove the colorful

hair bands she was wearing as they were gang-affiliated colors. Second Bair Dec., ¶9; Bair Dep.

at 32:15-25; Deposition of Olyntia Sewell ("Sewell Dep."), Exhibit F in ECF No. 77-1, at 56:21-

57:8. While Bair was attempting to remove her hair bands, Sewell and the other booking support

officer screamed at Bair to get down on the ground, and when Bair was unable to quickly do so

due to the condition of her knee and hip, slammed her against the wall, and took her to the

ground. Bair Dep. at 32:22-33:24; Second Bair Dec., ¶10; Collier Dep. at 28:17-29:2; DUI Arrest

Report.  Taylor Jones, Scott Lewis, Robert Ogawa, and Scott Warnken joined Sewell and the

second booking support officer in the assault of Bair and forced her to the ground. Defendants

admit that no use-of-force report was completed regarding this assault. *Id*. None of the individual

defendants were disciplined for the incident or for failing to complete a use-of-force report.

Sewell and each of the aforementioned officers used unreasonable force, landing multiple

blows on Bair's face, torso, arms, and lower body which resulted in fractures to her ribs. Bair

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT SISAWO - 3
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

Dep. at 33:8-17; Second Bair Dec., ¶¶10-13.  The officers then dragged Bair to a cell and told her to remove her clothing and change into a suicide smock. Bair Dep. at 43:18-45:1; Second Bair Dec., ¶¶13-14. Bair's body was covered with purple and red bruises. Photographs of Cheryl Bair taken at Providence Hospital on July 16, 2017 ("Providence Hospital photos"), Exhibit G in ECF No. 77-1; Second Bair Dec., ¶¶19, 23. Bair was never given any handbook or instructions about how to make a medical complaint, declare a medical emergency, or request medical treatment. Second Bair Dec., ¶14. Bair suffered painful injuries requiring medical attention but never received any medical treatment addressing them or medication for her bipolar disorder from the time she arrived at Snohomish County Jail until her release two days later. *Id.*, ¶¶15-16.

Despite Bair's obvious physical injuries and her constant complaints of pain and emotional distress, defendant Hamadi Sisawo did nothing to assist her or to get her the medical attention that her injuries required. *Id.*; Bair Dep. at 144:11-13, 145:5-10. While in custody, Bair notified Sisawo and corrections staff on duty at the jail of her severe pain and injuries and that she needed help. Bair Dep. at 45:7-10, 50:5-15, 53:13-21; Second Bair Dec., ¶¶15, 17. Bair did notify Jail staff that she was bipolar. Bair Dep. at 57:6-58:1; Second Bair Dec., ¶16.

Defendant Hamadi Sisawo, who is a registered nurse, conducted Bair's "Fit for Jail" evaluation sometime after Bair's arrival at the jail. Fit for Jail form, Exhibit H in ECF No. 77-1; Deposition of Hamadi Sisawo ("Sisawo Dep."), Exhibit A to Declaration of Darryl Parker in Support of Plaintiff's Motion for Partial Summary Judgment Against Defendant Hamadi Sisawo ("Parker Dec."), at 57:24-58:2. The exact time that Sisawo conducted his evaluation of Bair is unclear. The time appears to be approximately 10:00 p.m. but, in Sisawo's computerized chart notes, he entered 8 p.m. for when he saw Bair at the booking door. Bair's patient history at 36. Bair's booking photo was taken the following evening, on July 15, 2017. Bair Dep. at 54:10-

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT SISAWO - 4
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

55:12; Second Bair Dec., ¶18; Sewell Dep. at 71:16-72:23. Bair's booking photo shows bruising from the assault on the exposed portion of her arm under the sleeve of her jail-issued garment. Booking photo of Cheryl Bair ("Bair Booking Photo"), Exhibit J in ECF No. 77-1. Sisawo completed the computerized medical intake screening form following Bair's assault but failed to record any of her injuries. Bair's patient history, at 1, 4, 36-37. Aside from dressing one abrasion on Bair's wrist, Sisawo did not treat her serious chest injuries and bruises or refer her to the medical unit for further assessments, despite Bair telling him that she had severe neck, chest, and arm pain and told him that she could not breathe. *Id*. at 37; Sisawo Dep. at 40:24-41:2, 68:12-21; Bair Dep. at 50:5-15, 53:13-21.

At 10:12 p.m., defendant Scott Lewis authorized placing Bair on suicide watch as Bair had made some suicidal statements. Bair Dep. at 45:2-6; Suicide Watch Log, Exhibit K in ECF No. 77-1. Jail personnel began observing Bair at ten-minute intervals and made entries in the Special Watch Log accordingly. *Id*.

Although several corrections officers, including Jones, Lewis, Ogawa, Sewell, and Warnken, participated in the Special Watch, no one reported to medical staff Bair's extensive bruising and injuries. Bair sustained bruising on her face, as wells as scratches, bloody spots, and wounds throughout her body. *Id*.; Providence Hospital photos.

Upon her July 16, 2017 release from custody, Bair immediately went to Providence Regional Medical Center in Everett, where an examining physician documented the injuries she sustained from her assault at Snohomish county jail. Bair Dep. at 59:22-61:14; Second Bair Dec., ¶¶21-23; ECF No. 79, ¶4. Medical records from Bair's July 16, 2017 Providence Hospital visit ("Providence July 16th medical records"), Exhibit L in ECF No. 77-1. Staff at Providence contacted Dawson Assault Center, which dispatched technicians who documented Bair's

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT SISAWO - 5
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

condition and photographed her face, arms, and legs. July 16, 2017 Forensic Nurse Report ("Forensic Nurse Report"), Exhibit M in ECF No. 77-1. Their photos show gashes, bruises, swelling, and dried blood on Bair's body. *Id.*; Providence Hospital photos. After the incident, Bair's mental health greatly deteriorated, including feeling suicidal to where she needed to be taken to the emergency room. Second Bair Dec., ¶24; ECF No. 79, ¶6.

Additional facts are set out in the Argument and Authority section below.

## III.    ISSUES PRESENTED

1.    Whether Defendant Sisawo's actions were under the color of law.

2.    Whether Defendant Sisawo is not entitled to qualified immunity.

3.    Whether Defendant Sisawo violated Bair's Fourteenth Amendment Due Process right to adequate medical care as a matter of law.

4.    Whether Defendant Sisawo's medical negligence used against Bair was the proximate cause of Bair's aggravated injuries and damages.

## IV.    EVIDENCE RELIED UPON

1.    Declaration of Darryl Parker in Support of Plaintiff's Motion for Summary Judgment against Defendant Sisawo;

2.    Second Declaration of Cheryl Bair;

3.    Second Declaration of Alexis Telles; and

4.    The documents and pleadings herein and on file with the Court.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT SISAWO - 6
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

## V.    ARGUMENT AND AUTHORITY

### A.    Legal Standard When a Plaintiff Moves for Summary Judgment

The principle purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories and admissions, and any affidavits show a lack of "genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only facts which may affect the outcome of the case are considered material for these purposes. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

As will be shown below, Bair can demonstrate the absence of material facts with respect to the individual defendants' liability on all of her claims for relief. Even viewing the facts in the light most favorable to the defendants, their conduct toward Bair after she entered the jail and her subsequent incarceration violated Bair's due process rights under the Fourteenth Amendment entitles her to a judgment of liability under 42 U.S.C. §1983.

### B.    Defendant Sisawo Failed to Provide Medical Treatment for a Serious Injury and Violated Due Process and Section 1983

There are several legal issues raised by the facts of this lawsuit that must be addressed before the Court can rule on Plaintiff's Motion for Summary Judgment. Among these issues is whether defendant Nurse Sisawo, who was employed by a private company while working as a nurse at the jail, was acting under color of law when he was charged with Bair's care; what is the constitutional standard by which his conduct should be evaluated; and whether qualified immunity is a legally available defense for this defendant.  Plaintiff will address these issues separately.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT SISAWO - 7
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

**1.     Defendant Sisawo's interactions with Bair at the jail were under color of law**

During July 14 to July 17, 2017, Sisawo was a contract medical provider with Shift Cascade Health Services. ECF 70-1 at 11:21-23. Courts have developed various tests for determining whether an individual's actions are "state action." *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835–36 & n. 4 (9th Cir.1999). The relevant one here is the "close nexus/joint action" test.

In order to be considered state action, when a private actor participates in a governmental act, the court must find a sufficiently close nexus between the state and the private actor "so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974).  A private contractor who is designated by the County to provide healthcare to inmates along with County employees is acting under color of law under this test.

In the Ninth Circuit, medical professionals who contract with prisons or jails to provide medical services are acting under color of state law when treating an inmate or detainee. *West v. Atkins*, 487 U.S. 42, 53–54 (1988); *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (*per curiam*) (hospital and ambulance service under contract with the state). Therefore, Sisawo was acting under color of state law during his interactions with Bair at Snohomish County Jail.  It also appears from the answers filed by each defendant that they admit that, during his care of Bair, Sisawo was acting within the course and scope of his employment with Snohomish County.

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

**2.      As a private contractor, Sisawo is not entitled to qualified immunity**

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). "[T]he salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). A case "directly on point" is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The doctrine of qualified immunity strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions. *Wyatt v. Cole*, 504 U.S. 158, 167 (1992) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)). Among the important rationales advanced for qualified immunity are the preservation of the government's ability to serve the public good by zealous enforcement of the law and the avoidance of deterring talented candidates from entering government employment for fear of liability. See *id*.  "The chief justifications for qualified immunity include: (1) protecting the public from unwarranted timidity on the part of public officials and encouraging the vigorous exercise of official authority[;]" "(2) preventing lawsuits from distracting officials from their governmental duties[;]" "and (3) ensur[ing] that talented candidates [are] not deterred by the threat of damages suits from entering public service ...." *Id*.  (internal quotation marks and citations omitted). *Jensen v. Lane County*, 222 F.3d 570, 576 (2000). The Ninth Circuit went on to hold that that in a 42 U.S.C. §1983 suit, a private physician providing medical services to a government entity pursuant to a contract with that entity is acting under color of law, but is not entitled to qualified immunity. *Id*.

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

Therefore, pursuant to established Ninth Circuit precedent, a privately employed nurse, like Sisawo, contracting with the county to provide medical services in the jail is acting under color of law but for historical and policy reasons is not entitled to qualified immunity.

**3.      Defendant Sisawo was deliberately indifferent to Bair's Fourteenth Amendment due process right to adequate medical care**

Because Bair was a pre-trial detainee at the time of this event, her claim is analyzed under "the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 535, (1979); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir.1998). With regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: "persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs." *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996).

To establish a claim for deliberate indifference to medical needs under the Due Process Clause of the Fourteenth Amendment, a pre-trial detainee must establish two elements: (1) that the "deprivation of medical care was 'sufficiently serious'," and (2) that the defendant "acted or failed to act with 'a sufficiently culpable state of mind'." *See Farmer v. Brennan*, 511 U.S. 825, 841 (1994).

Following the U.S. Supreme Court's pronouncement in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), where it held that a pre-trial detainee bringing an excessive force claim "must show only that the force purposely or knowingly used against him was objectively unreasonable" rather than prove "a subjective standard that takes into account a defendant's state of mind," the Ninth Circuit applied the same reasoning to failure to provide medical treatment claims in *Gordon v. Orange County*, 888 F.3d 1118 (9th Cir. 2018), and held that these claims must be

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT SISAWO - 10
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

evaluated under "an objective deliberate indifference standard." *Gordon*, 888 F.3d at 1124-25. Now, in order to make out a claim of denial of medical care a detainee is required to prove the following elements:  (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. *Id*. at 1125.

By ignoring clearly visible injuries and Bair's multiple complaints of injury, Sisawo made an intentional decision to not provide Bair with thorough medical assessment and treatment. After the violent assault on Bair, Sisawo had reason to know that Bair needed immediate medical care. Her ribs were fractured during the attack and she had multiple scrapes and abrasions all over her bodies, with large bruises forming. The bruises were even visible in her booking photo. Bair Booking Photo. Sisawo acknowledges that there is visible bruising in Bair's booking photo taken on Saturday evening, so he must have been able to see the bruising when he saw her at 3:35 am early Sunday morning. Sisawo Dep. at 80:13-15. At this time, Bair was begging him for help as her chest, neck, and arms were in severe pain and she was having difficulty breathing. Bair Dep. at 52:11-21; 53:13-21. However, Sisawo merely wrote down her complaints as "general body aches" without even mentioning that she had complained about not being able to breathe. Bair's patient history, at 37. Sisawo should have been able to identify that Bair was injured even earlier when he dressed a wound on her wrist two hours after the assault. *Id*. at 36. He indicates that he observed a medical problem when he saw her. Sisawo Dep. at 32:6-12. Sisawo was also well aware of protocols of examining visible bruises on inmates,

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT SISAWO - 11
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

assessing pain levels, and determining whether the next level of care is required. *Id*. at 83:19-85:7, 94:4-13. Yet, even after observing them at the height of their visibility, he did not provide Bair with the medical treatment she needed.

Bair's retained medical expert confirms that Sisawo failed to meet the minimum standards of care for a Registered Nurse and was deliberately indifferent to Bair's injuries. Alexis Telles, RN, MPA, has been a nurse for 15 years, 7 of which she spent working in jails and prisons. Exhibit A to Second Declaration of Alexis Telles ("Second Telles Dec."), ¶2. After reviewing Sisawo's and Bair's depositions, Bair's jail forms and booking photos, and Bair's medical records, Telles concluded that Sisawo failed his responsibility as a nurse to assess, identify, treat, and document Bair's serious injuries and was deliberately indifferent to her medical needs. Exhibit B to Second Telles Dec. ("Telles report"), at 17-18; Second Telles Dec., ¶¶11-15. Her opinion is summarized below:

> It is my opinion that the nursing care that was provided to Ms. Bair by RN Sisawo Hamadi was grossly inadequate and demonstrated a complete lack of regard for her health, safety, and wellbeing. This lack of regard for Ms. Bair demonstrates deliberate indifference in my professional opinion.

Telles report, at 15. Nurse Telles opined that Bair's injuries were sufficiently severe that they would have been obvious to a medical professional during even brief contact and that Sisawo's failure to act on these obvious and severe injuries demonstrates his deliberate indifference towards Bair's serious medical needs, particularly since she was on suicide watch with a wound on her wrist. *Id*. at 18; Second Telles Dec., ¶¶13-14, 19.

Without medical treatment, Bair's fractured ribs could have resulted in a collapsed lung and bleeding in the chest cavity, and without her medication for her bipolar disorder, her mental state was extremely precarious, evidenced by the fact that she felt suicidal and was later placed

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT SISAWO - 12
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

in a suicide watch cell. Telles report, at 14-15; Second Telles Dec., ¶¶5, 10. The lack of care certainly aggravated and prolonged her physical pain and emotional duress caused by the assault. Sisawo could have immediately summoned emergency medical care for Bair after observing her severe injuries to reduce the risk of her experiencing further pain and injuries. He could have had her transported to the hospital for urgent care at any point, especially when he dressed her wrist wound and observed her other injuries. These are not only reasonable available measures, but also expected duties of a medical professional overseeing detainees on suicide watch. A reasonable nurse assessing a detainee on suicide watch would have conducted a thorough medical assessment after observing a cut on that detainee's wrist and at the very least would have ascertained the source of the cut and looked for others to determine if Bair was actively trying to commit suicide.

By not providing Bair with proper medical care after observing her injuries, Sisawo caused her to endure great pain and suffering for the next two days, displaying objective deliberate indifference in violation of Bair's Fourteenth Amendment due process right to adequate medical care. Had Sisawo promptly provided appropriate medical care, the period of distress that Bair suffered would have been significantly shortened. *Horton v. City of Santa Maria*, 915 F.3d 592, 607 (9th Cir. 2019).

**4.      Sisawo was negligent in failing to fulfill his duty to provide adequate medical care to Bair, and the medical negligence used against Bair was the proximate cause of her aggravated injuries and damages**

Negligence is conduct that "falls below the standard established by law for the protection of others against unreasonable risk." *Hunsley v. Giard,* 87 Wn.2d 424, 435, 553 P.2d 1096 (1976) (quoting *W. Prosser, Handbook of the Law of Torts* (4th ed. 1971) ("*Handbook*"), sec. 43, at 250). "It necessarily involves a foreseeable risk, a threatened danger of injury, and conduct

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT SISAWO - 13
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

1   unreasonable in proportion to the danger." *Hunsley*, 87 Wn.2d at 435.  If a defendant could not

2   reasonably foresee any injury as the result of his or her act, there is no negligence, and no

3   liability.  *Id*.  To establish proximate cause, a claimant must prove that the negligent conduct

4   caused in a direct sequence, unbroken by any independent cause, the injury complained of.

5   *Hoffer v. Stat*e, 110 Wn.2d 415, 424, 755 P.2d 781 (1988) (*citing Alger v. Mukilteo*, 107 Wn.2d

6   541, 545, 730 P.2d 1333 (1987)); *Harvey v. County of Snohomish*, 124 Wn. App. 806, 819, 103

7   P.3d 836 (2004), *review granted*, 155 Wn.2d 1007, 122 P.3d 728 (2005).

8           Under Washington law, a negligence claim against a health care provider requires a

9   showing that: (1) the provider failed to exercise that degree of skill, care, and learning expected

10   of a reasonably prudent health care provider in the profession or the class to which he belongs, in

11   the State of Washington, acting in the same or similar circumstances; and (2) such failure was

12   the proximate cause of the injury complained of. See RCW 7.70.040.

13           As a matter of statute, Registered Nurses are required to provide a standard of care that

14   protects and advocates for their patients. See WAC 246-840-700(3)(c) ("The registered nurse

15   and licensed practical nurse act as client advocates in health maintenance and clinical care.").

16   Sisawo was thus required by statute to act as an advocate for Bair in her health maintenance and

17   clinical care for her injuries sustained at Snohomish County Jail. To act as an advocate, one's

18   performance must not merely be reasonable; it must be executed with the utmost care and

19   precision and go beyond simply meeting medical standards. Further, Sisawo is responsible and

20   accountable for the quality of nursing care given to his clients, and "[t]his responsibility cannot

21   be avoided by accepting the orders or directions of another person." WAC 246-840-700(1).

22           In denying Bair medical care for all of the injuries she sustained after the assault and

23   medication for her mental condition, Sisawo failed to exercise the degree of skill and care

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT SISAWO - 14
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

1    expected of a reasonably prudent correctional nurse. As a result, Bair suffered excruciating pain

2    and injuries from her bruises, swelling, cuts, and fractured ribs. There is clear proximate

3    causation between Sisawo's failure to provide Bair medical care and the resulting aggravation of

4    her injuries.

5          Nurse Alexis Telles, RN, MPA, plaintiff's retained medical expert, confirms that Sisawo

6    failed to meet the minimum standards of care for a Registered Nurse. Nurse Telles spent 7 years

7    working as a nurse in jails and prisons and can thus be considered a reasonably prudent health

8    care provider in the same profession as Sisawo. Exhibit A to Second Telles Dec., ¶2. Telles

9    references WAC 246-840-700 Standards of Nursing Conduct of Practice in determining the

10   appropriate standards of care to which Sisawo must be held. These Standards specify that "[t]he

11   registered nurse initiates data collection and analysis that includes pertinent objective and

12   subjective data regarding the health status of the clients. The registered nurse is responsible for

13   ongoing client assessment, including the assimilation of data gathered from licensed practical

14   nurses and other members of the health care team." Telles report, at 15-16; Second Telles Dec.,

15   ¶¶11-12. Additionally, "[t]he registered nurse uses client data and nursing scientific principles to

16   develop a nursing diagnosis and to identify client problems in order to deliver effective nursing

17   care." *Id*. After reviewing Sisawo's and Bair's depositions, Bair's jail forms and booking photos,

18   and Bair's medical records, Nurse Telles concluded that Sisawo failed his responsibility as a

19   nurse to comply with nursing standards of care and assess, identify, treat, and document Bair's

20   serious injuries. Telles report, 17-18; Second Telles Dec., ¶¶13, 15.

21         When Sisawo conducted Bair's "Fit for Jail" form two hours after her arrival at the jail,

22   he asked Bair various questions concerning her medical history, medications, and mental health

23   condition. Fit for Jail form, Exhibit H in ECF No. 77-1; Sisawo Dep. at 57:24-58:2. In his

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT SISAWO - 15
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

deposition, Sisawo testified that he is not authorized to give a physical examination. Sisawo Dep. at 26:20-22. He also stated that he would not have asked Bair to remove her clothing unless it was necessary for measuring vitals. *Id*. at 27:11-20. Yet, the abrasions and marks on Bair's body were visible even with a jacket over her upper body. Bair Booking Photo; Providence Hospital photos. Bair's bruising and marks were so conspicuous that the next day when her booking photo was taken on the evening of July 15, 2017 it showed the bodily injuries she sustained from being thrown to the ground and grabbed by all of the officers. Bair Booking Photo; Bair Dep. at 54:10-55:12; Second Bair Dec., ¶¶18-19; Sewell Dep. at 71:16-72:23. Hence, Sisawo must have been able to observe Bair's injuries at some point when he met with her. Second Telles Dec., ¶18-19/

After Sisawo completed his first meeting with Bair, he completed the computerized medical intake screening form following Bair's assault but failed to record any of her injuries. Bair's patient history, at 1-2, 4-5, 36-37. Sisawo observed Bair's injuries and her acute emotional distress but ignored them. Sisawo Dep. at 32:6-12, 33:1-8. He did not treat Bair's serious injuries nor refer her to the medical unit or a female nurse for further assessments, even though Bair complained to him of pain in her neck, chest, and arms and told him that she could not breathe. Bair's patent history, 37; Sisawo Dep. at 40:24-41:2, 68:12-21; Bair Dep. at 50:5-15, 53:13-21; Second Telles Dec., ¶16. Sisawo failed to use the client data that Bair provided him and to identify her medical problems, aside from mischaracterizing her severe pain as "general body aches." WAC 246-840-700(2)(a)(i)(B); Bair's patient history, 37; Second Telles Dec., ¶¶14-15. Additionally, Sisawo admitted having made errors while entering Bair's health information into the computer during Bair's Fit for Jail exam. He incorrectly entered that Bair was not suicidal, even though she told him that she was, thereby relaying incorrect medical information to other medical staff at Snohomish County Jail. Sisawo Dep. at 54:16-55:5. Such sloppy work seriously

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT SISAWO - 16
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

endangered Bair's safety.

Sisawo admits that he only looked at the injuries that were made aware to him, instead of assessing Bair for the other injuries of which she was complaining. Sisawo Dep. at 63:11-16. However, Sisawo's responsibility for the quality of nursing care given to Bair does not end with dressing a cut on her wrist, which Sergeant Lewis instructed him to do. WAC 246-840-700(1). At the very least, Sisawo was responsible for identifying and assessing each of Bair's complaints. Second Telles Dec., ¶¶11-12. Bair complained that she was unable to breathe and that her chest was hurting but nothing in the record shows that Sisawo addressed these complaints. Bair Dep. at 52:11-21, 53:13-21; Bair's patient history. Sisawo also did not inquire as to the origin of the cut on Bair's wrist, assess her for other injuries, or refer her to the medical unit for further assessments, despite the fact that Bair was suicidal at the time and being held in a safety cell on suicide watch. Second Telles Dec., ¶¶13-14. Sisawo did not even properly document Bair's medical complaints. Such conduct is listed in WAC 246-840-710, which sets out various Violations of Standards of Nursing Conduct or Practice, including failing to assess and evaluate a client's status, failing to institute nursing intervention as required by the client's condition, willfully or repeatedly failing to report or document a client's symptoms and responses, and willfully or repeatedly failing to make entries or making incorrect entries in client records. WAC 246-840-710(2)(a-c). Thus, there is no question that Sisawo, in caring for Bair, failed to exercise the degree of skill, care, and learning expected of a reasonably prudent Registered Nurse in the state of Washington.  This failure resulted in the aggravation of the physical pain and emotional duress that Bair was already suffering.

The evidence in this case strongly indicates that Sisawo believed Bair to be a drunk, leading him to negligently perform his duties as a nurse and not take seriously Bair's complaints

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT SISAWO - 17
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

of pain and breathing difficulties. His entries in Bair's patient history and chart notes indicating that Bair was under the influence of alcohol and was on withdrawal watch specifically for alcohol detoxification, despite a breathalyzer reading of 0.0 and hospital notes stating that she did not appear to be clinically intoxicated in any way, support this theory. Bair's patient history, at 1, 4, 36; Providence medical records, at 6, 12; DUI Arrest Report.

In any case, the fact that the extent of the medical care Sisawo provided was cleaning and dressing a single cut on Bair's wrist out of all her other injuries shows that Sisawo was grossly negligent in his duty to provide medical care to Bair after her assault. Plaintiff has thus met each element of a negligence claim.

Since defendant Snohomish County has admitted that, during Sisawo's care of Bair at its jail in July of 2017 Sisawo was acting within the course and scope of his employment with the County, said defendant is liable for Sisawo's negligence and his violation of the minimum standards of care required by Washington law.

## VI.   CONCLUSION

For the foregoing reasons, plaintiff Cheryl Bair asks this Court to grant her motion for partial summary judgment against defendant Hamadi Sisawo and rule that defendant Snohomish County is liable under state law for all harms caused by Sisawo.

DATED this 23rd day of November, 2020.

CIVIL RIGHTS JUSTICE CENTER, PLLC


*/s/ Darryl Parker*_____
Darryl Parker, WSBA #30770
Attorney for Plaintiff

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT SISAWO - 18
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

**CERTIFICATE OF SERVICE**

I, Krithi Basu, under penalty of perjury under the laws of the State of Washington declare as follows:

I am a Washington resident over the age of 18 and not a party to this action. On the date and in the manner indicated below, I caused the foregoing PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT SISAWO and this CERTIFICATE OF SERVICE to be electronically filed with the Clerk of the Court using CM/ECF system which will send notification of the filing to all counsel of record.

DATED this 23rd day of November, 2020 at Seattle, Washington.


*/s/ Krithi Basu*_____
**Krithi Basu**, Legal Assistant

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST DEFENDANT SISAWO - 19
Case No. 2:19-cv-00998 BJR

**Civil Rights Justice Center, PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183