UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |  |
|---|---|---|
| CHERYL BAIR, | ) | CASE NO. 2:19-cv-00998-BJR |
| | ) | |
| *Plaintiff*, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANT |
| v. | ) | SNOHOMISH COUNTY AND |
| | ) | DEFENDANT SISAWO'S MOTIONS |
| SNOHOMISH COUNTY, *et al.*, | ) | FOR SUMMARY JUDGMENT; DENYING |
| | ) | PLAINTIFF'S MOTIONS FOR PARTIAL |
| *Defendants*. | ) | SUMMARY JUDGMENT; HOLDING IN |
| | ) | ABEYANCE DEFENDANT SISAWO'S |
| | ) | MOTION TO EXCLUDE; AND |
| | ) | ORDERING PROPOSED CASE |
| | ) | SCHEDULE |

## I.   INTRODUCTION

Plaintiff Cheryl Bair brings the current suit claiming she was assaulted by Snohomish County Jail staff, and her wounds left unattended for two days while she remained in the Jail, after an alleged, but uncharged, DUI arrest.  She sues two sets of defendants; first, the County and its employees (collectively, the "Snohomish Defendants") who she claims were responsible for the assault and her subsequent neglect and, second, Defendant Hamadi Sisawo, a Registered Nurse, who at the time of Plaintiff's jailing worked as a contractor at the Jail and examined Plaintiff for fitness for jail.

1

Currently before the Court are five separate motions: the County/Snohomish Defendants and Nurse Sisawo each bring their own Motions for Summary Judgment,[1] *see* Dkt. Nos. 64 ("Snohomish Mot."), 95 ("Sisawo Mot."),[2] and Plaintiff brings a Motion for Partial Summary Judgment against each set of Defendants, *see* Dkt. Nos. 87 ("Pl.'s Sisawo Mot. "), 91 ("Pl.'s Snohomish Mot."). Additionally, Nurse Sisawo brings a Motion to Exclude Opinions and Testimony of Alexis Telles, one of Plaintiff's expert witnesses. Dkt. No. 97 ("Mot. to Exclude").[3] All parties agree, however, that at least some disputes of fact exist preventing full summary judgment and necessitating a trial.

Having reviewed the Motions, the oppositions thereto, the record of the case, and the relevant legal authorities, the Court will grant in part and deny in part the County/Snohomish Defendants and Nurse Sisawo's Motions for Summary Judgment, deny in full Plaintiff's Motions, and hold in abeyance Nurse Sisawo's Motion to Exclude. The reasoning for the Court's decision follows.

## II.    BACKGROUND

### A. Plaintiff's Arrest

Plaintiff reports that she has suffered from bipolar disorder and depression for most of her adult life. *See* Second Am. Compl., Dkt. No. 28, ¶ 59; *see also* Decl. of Cheryl Bair, Dkt. No. 78

---

[1] The County/Snohomish Defendants' move only for partial summary judgment as they concede to several disputes of fact regarding some of Plaintiff's claims. *See infra* at 10–11.

[2] Nurse Sisawo's Motion requests oral argument. Sisawo Mot. at 1. The Court determines that oral argument is unnecessary to resolve the motions and will, therefore, deny the request. *See* Local Rules WD. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").

[3] The Snohomish Defendants join in Nurse Sisawo's Motion to Exclude. *See* Snohomish County Defs.' Resp. to Pl.'s Mot. for Summ. J., Dkt. No. 105 at 2 ("Resp. to Pl.'s Snohomish Mot.").

¶ 3 ("First Bair Decl."); Decl. of Cheryl Bair, Dkt. No. 89. ¶ 3 ("Second Bair Decl.").  On July 14, 2017, she was driving in stop-and-go traffic when she rear-ended the car in front of her.  While the airbags in her car deployed, Plaintiff claims she was not injured during the accident and her car was not damaged.  First Bair Decl. ¶ 5; Second Bair Decl. ¶ 5.

Washington State Troopers were called to the scene, including Trooper Willard Collier.  In interacting with Plaintiff, Trooper Collier suspected she had been driving under the influence of a controlled substance as she was "talkative" but "lethargic," occasionally slurred her speech, and had droopy, red eyes.  Decl. of Emory Wogenstahl, Ex. B, Dkt. No. 96-2 at 7 ("DUI Arrest Report").  Plaintiff claims she was not under the influence, but had difficulty standing due to a hip replacement and several knee surgeries, and that the appearance of her eyes is a side effect of medication she is prescribed.  First Bair Decl. ¶ 6; Second Bair Decl. ¶ 6.  Trooper Collier administered a breathalyzer, which registered zero presence of alcohol.  He then administered a field sobriety test, which Plaintiff allegedly failed.  DUI Arrest Report at 7.

Based on her failed field sobriety test, Trooper Collier placed Plaintiff under arrest and obtained a telephonic warrant for a blood test.  *Id.*  He also conducted a search of her vehicle subsequent to the arrest and found two prescription medication bottles, including one for Clonazepam, which is a type of benzodiazepine used to treat Plaintiff's bipolar disorder.  *Id.*

**B. First Visit to the Hospital**

Trooper Collier then transported Plaintiff to Providence Regional Medical Center in Everett to administer the blood test.  *See* Decl. of Darryl Parker, Ex. D, Dkt. No. 77-1 at 51–66 ("July 14 Providence Regional Medical Center Records"); Decl. of Emory Wogenstahl, Ex. D, Dkt. No. 96-4 ("Toxicology Test Report").  While at the hospital, Defendants claim that Plaintiff's

3

mood was "volatile" and that she refused medical examination or treatment by the doctors. Snohomish Mot. at 4; *see also* DUI Arrest Report at 7 (describing Plaintiff as having "mood swings" and "cursing allot" [sic]).  Plaintiff claims that at no time during this hospital visit did she show signs of injury or intoxication and that she refused medical treatment because she knew she was uninjured.  First Bair Decl. ¶ 7; Second Bair Decl. ¶ 7.

Doctors administered the blood test, which confirmed the presence of Clonazepam in Plaintiff's system, but no alcohol or other illegal drug.  Toxicology Test Report at 3–4.  While Plaintiff's medical records from the hospital confirm that a full physical was not conducted, the doctor's observations indicate that she was in good health, alert, without signs of head, face, or neck trauma, and was "breathing comfortably and speaking in full sentences."  July 14 Providence Regional Medical Center Records at 55, 61–62.

### C. Snohomish County Jail

Trooper Willard then transported Plaintiff to the Snohomish County Jail, arriving at approximately 8:10 p.m.  Snohomish Mot. at 5.  There is a dispute of fact over what happened when County staff attempted to book Plaintiff into the Jail (hereinafter referred to as the "Booking Incident").  Defendants allege that during booking Plaintiff attempted to kick one of the corrections officers and, consequentially, she was restrained.  *See, e.g.*, *id.*; *see also* DUI Arrest Report at 7. Plaintiff, on the other hand, claims she was merely slow to respond to directions issued by the correctional officers because of her knee and hip.  First Bair Decl. ¶¶ 9–13; Second Bair Decl. ¶¶ 9–13.  She claims that Corrections Deputies (and Defendants) Olyntia Sewell, Taylor Jones, Scott Warnken, Sergeant Scott Lewis, and Lieutenant Robert Ogawa first slammed her against a wall, took her to the ground, and proceeded to land multiple blows to her face, torso, arms, and lower

4

body, causing her severe injury.  No use of force report was written in relation to the incident, *see* Second Am. Compl. ¶ 26; Snohomish Mot. at 2, and Plaintiff claims she was not given a handbook or instructions on how to make a medical complaint or request medical care, Second Bair Decl. ¶ 14; *see also* Suppl. Decl. of Darryl Parker, Ex. A, Dkt. No. 111-1 at 2–6 ("Inmate Orientation Handbook" including instructions for inmates to submit formal requests for medical attention).

Shortly after the Booking Incident, Defendants allege that Plaintiff made suicidal statements necessitating placing her on suicide watch, which entails corrections deputies conducting welfare checks every ten minutes and recording their observations in a log.  *See* Decl. of David Hall, Ex. B, Dkt. No. 66 at 9–11 ("Suicide Watch Logs").  Inmates on suicide watch are also given a safety smock, which covers their bodies from shoulder to shin, and a blanket. Additionally, because she had been brought in on a suspected DUI, Plaintiff was placed on withdrawal watch, which entails welfare checks every half an hour to hour.  *See* Decl. of David Hall, Ex. A, Dkt. No. 66 at 6–7 ("Withdrawal Watch Logs").  Logs from both of these checks confirm that Jail staff, including Deputies Jones, Warnken, Sgt. Lewis, and Lt. Ogawa, conducted suicide watches every ten minutes from 10:12 p.m. on July 14 to 8:26 a.m. on July 15 and withdrawal watches from 10:00 p.m. on July 14 to 9:00 p.m. on July 16.  *See* Suicide Watch Logs; Withdrawal Watch Logs; *see also* Decl. of David Hall, Dkt. No. 66 ¶¶ 7–8.

According to the Jail's medical records, Plaintiff interacted with Nurse Sisawo at least three times while being held.  *See* Decl. of Darryl Parker, Ex. E, Dkt. No. 77-1 at 68–80 (Snohomish County Jail "Full Patient History").  On July 14, the day of the arrest, Nurse Sisawo conducted Plaintiff's "Fit for Jail" evaluation, clearing her for booking into the Jail, and completed a Fit for Jail Form.  *See* Decl. of Darryl Parker, Ex. H, Dkt. No. 77-1 at 106 ("Fit for Jail Form"); Full

Patient History at 75.  Shortly thereafter, Nurse Sisawo treated and dressed an abrasion on Plaintiff's wrist.  Full Patient History at 75.  On July 16, he checked on Plaintiff, taking her vitals and asking her about her condition.  *Id.* at 76.  He contends that during this visit Plaintiff complained about "general body aches" but that when he offered her pain medication to address those concerns she refused.  *Id.*  Plaintiff also interacted with Jail Mental Health Professional ("MHP") Jason Burns on July 15.  *Id.* at 75–76.  During his evaluation, MHP Burns determined that Plaintiff was not suicidal, and removed her from suicide watch.

Plaintiff claims that, despite telling both County staff and Nurse Sisawo numerous times that she was injured and in pain, she did not receive treatment.  *See, e.g.*, First Bair Decl. ¶¶14–15; Second Bair Decl. ¶¶ 14–17.  Further, she claims that despite informing County staff and Nurse Sisawo of her need for her prescribed medication, she was never provided with her medication. Plaintiff was released from the Snohomish County Jail on July 16, 2017.

### D. Second Visit to the Hospital

After being released from Jail, Plaintiff went, almost directly, back to Providence Hospital. *See* Decl. of Darryl Parker, Ex. L, Dkt. No. 77-1 at 137–144 ("July 16 Providence Regional Medical Center Records").  There, an examining physician diagnosed Plaintiff with extensive bruises on her arms and shoulders, lacerations on her wrist and legs, and four fractured ribs.  *Id.* at 140.  The medical staff also contacted the Dawson Assault Center, who dispatched technicians to document Plaintiff's condition, including taking photographs of bruising on her face, arms, and legs, and composing a Forensic Nurse Report.  *See* Decl. of Darryl Parker, Ex. G, Dkt. No. 77-1 at 99–104 (Photos of Injuries taken on July 16 at Providence Hospital); Decl. of Darryl Parker, Ex. M, Dkt. No. 77-1 at 146–51 (Forensic Nurse Report).  Once Plaintiff's wounds were documented,

she received outpatient care and was checked out of the hospital that same day.

**E. Procedural History**

Plaintiff first filed suit on May 24, 2019 in Snohomish County Superior Court.  Compl.,
Dkt. No. 1-2.  The matter was removed to this Court on June 26, 2019.  Notice of Removal, Dkt.
No. 1-1.  Plaintiff filed her operative Complaint on February 18, 2020.  Second Am. Compl., Dkt.
No. 28.  In it, she advances six causes of action:

(1) Unreasonable Force in violation of the Fourth and Fourteenth Amendments
    pursuant to 42 U.S.C. § 1983 against Defendants Sewell, Lewis, Ogawa,
    Warnken, and Jones;[4]

(2) Failure to Provide Medical Treatment for a Serious Injury (also referred to as
    "Deliberate Indifference") in violation of the Due Process Clause of the
    Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against all individual
    Defendants;

(3) a *Monell* claim pursuant to 42 U.S.C. § 1983 against Snohomish County;

(4) Disability Discrimination pursuant to the Americans with Disabilities Act of
    1990 ("ADA") and the Rehabilitation Act of 1973 against Snohomish County;

(5) a violation of the Fourteenth Amendment's Equal Protection Clause pursuant
    to 42 U.S.C. § 1983 against all individual Defendants; and

(6) Negligence against all Defendants.

*Id.* ¶¶ 31–74.

As mentioned earlier, there are five separate motions pending, including four motions for
(partial) summary judgment and one to exclude testimony.  *See supra* at 2.

---

[4] Plaintiff's Second Amended Complaint also names Booking Support Officer Jodi L. Martin and Deputy Chicara
Chesney.  Second Am. Compl. at 7.  Both have been dismissed from this action pursuant to stipulated motion.  *See*
Joint Stipulation and Order Dismissing Claims Against Def. Chicara Chesney, Dkt. No. 74; Joint Stipulation and
Order Dismissing All Claims Against Def. Jodi Martin, Dkt. No. 82.

## III.   EVIDENTIARY MOTIONS

Before proceeding to the merits of the Motions for Summary Judgment, both Nurse Sisawo and Plaintiff seek to exclude certain pieces of evidence from consideration during review of the Motions.   First, Nurse Sisawo moves for exclusion of the opinions, report, and testimony of Plaintiff's expert, Nurse Telles, arguing she lacks sufficient qualifications to serve as an expert and that her opinions are "conclusory and based on subjective and selective application of facts." Mot. to Exclude at 1.   As discussed below, the Court finds that there are sufficient disputes of fact in the record, not considering Nurse Telles's opinions and testimony, to preclude summary judgment on the claims for which Plaintiff would introduce her testimony.   The Court, therefore, will hold in abeyance Nurse Sisawo's Motion to Exclude at this time.

Second, Plaintiff's opposition to the Snohomish Defendants' Motion for Partial Summary Judgment contains a Motion to Strike several exhibits.   Pl.'s Opp'n to Snohomish County Defs.' Mot. for Partial Summ. J., Dkt. No. 76 at 7–8 ("Resp. to Snohomish Mot.").   Specifically, Plaintiff seeks to strike as improperly attested to hearsay Exhibits D, F, G, H, and I to the Declaration of Katharine Bosch, Dkt. No. 65, containing, respectively, the Jails' relevant policies, the Jail's Central Control Logs, the Fit for Jail Form, the Full Patient History, and Plaintiff's Fingerprint Sheet from booking.   Plaintiff, however, has separately submitted several of these same exhibits under attestation by her attorney without objection in support of the very Response in which she made her Motion to Strike.   *See* Decl. of Darryl Parker, Exs. E (Full Patient History), H (Fit for Jail Form), N (Fingerprint Sheet), Dkt. No. 77-1.   Additionally, the Snohomish Defendants have resubmitted a properly authenticated copy of the Jails' relevant policies.   Suppl. Decl. of David Hall, Ex. A, Dkt. No. 86 at 6–18.   The Court will deny Plaintiff's Motion to Strike and consider

8

these exhibits in review of the Motions for Partial Summary Judgment.

## IV.    MOTIONS FOR SUMMARY JUDGMENT[5]

### A. Legal Standard

Federal Rule of Civil Procedure 56 provides that the Court shall grant summary judgment on any claim for which the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   A fact is "material" where it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material facts is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

While reviewing a motion for summary judgment, the Court views the facts, and draws all inferences, in a "light most favorable to [] the non-movant." *Christian v. Umpqua Bank*, 984 F.3d 801, 808 (9th Cir. 2020).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255.  The movant bears the initial burden of establishing the lack of a genuine dispute of facts.  *See VHT, Inc. v. Zillow Grp., Inc.*, 461 F. Supp. 3d 1025, 1034 (W.D. Wash. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  If the movant will bear the ultimate burden of persuasion at trial, as Plaintiff here does on her claims, they must meet their

---

[5] The Court briefly notes that the Snohomish Defendants' Motion for Partial Summary Judgment originally sought dismissal of all claims against Officer Martin and Deputy Sewell.  Snohomish Mot. at 10–12.  Subsequent to the filing of the Motion, the parties stipulated to dismissal of all claims against Officer Martin.  *See supra* at 7 n.4. Additionally, the Snohomish Defendants' Reply in support of their Motion concedes a dispute of facts as to whether Deputy Sewell participated in the Booking Incident.  Reply in Support of Snohomish County Defs.' Mot. for Partial Summ. J., Dkt. No. 84 at 2–3 ("Reply to Snohomish Mot.").  As such, the Court will deny the Motion as to this claim.

initial burden by establishing their *prima facia* case by "present[ing] evidence that, if uncontroverted at trial, would entitle [them] to prevail on that issue." *Id.* (citing *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994)).  If, however, the movant does not bear the ultimate burden of persuasion, such as the Defendants regarding Plaintiff's claims, they may meet their initial burden by either (1) producing evidence negating an essential element of the non-movant's case or (2) showing that the non-movant lacks evidence of an essential element of their claim. *Id.* (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000)).  If the movant meets their initial burden, the nonmovant must "identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor" to avoid summary judgment.  *Id.* (citing *Celotex*, 477 U.S. at 324).

This standard does not change when parties cross-move for summary judgment on the same claim.  Where two parties seek summary judgment on the same claim, the Court must "consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001); *see also Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015); *AGCS Marine Ins. Co. v. Expeditors Int'l Ocean, Inc.*, 470 F. Supp. 3d 1210, 1216 (W.D. Wash. 2020).

**B.  Claim 1: Unreasonable Force**

As to Plaintiff's Unreasonable Force claim, the parties agree that there is a dispute of facts surrounding the propriety of the force used during the Booking Incident, which precludes summary judgment.  *See* Snohomish Mot. at 2; Resp. to Snohomish Mot. at 4.  Based on this same dispute of fact, the County concedes a corresponding dispute over Plaintiff's *Monell* claim, at least as it

10

pertains to the County's policies regarding use of force.  *See* Reply to Snohomish Mot. at 7–8.

## C. Claim 2: Deliberate Indifference to Serious Medical Needs

### 1.  *Snohomish Defendants*

Both the Snohomish Defendants and Plaintiff move for summary judgment on Plaintiff's

Deliberate Indifference claim.  In order to establish a claim of Deliberate Indifference pursuant to

Section 1983, Plaintiff must establish that

> (i) the defendant[s] made an intentional decision with respect to the conditions
> under which the [she] was confined; (ii) those conditions put [her] at substantial
> risk of suffering serious harm; (iii) the defendant[s] did not take reasonable
> available measures to abate that risk, even though a reasonable official in the
> circumstances would have appreciated the high degree of risk involved—making
> the consequences of the defendant[s'] conduct obvious; and (iv) by not taking such
> measures, the defendant[s] caused the [her] injuries.

*Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018); *Sandoval v. Cty. of San*

*Diego*, -- F.3d --, 2021 WL 116539, at *6–*8 (9th Cir. Jan. 13, 2021).

With respect to the third element, the standard for the Defendants' conduct is objective,

which the Ninth Circuit has stated is "a test that will necessarily turn on the facts and circumstances

of each particular case."  *Gordon*, 888 F.3d at 1125 (9th Cir. 2018) (quoting *Castro v. Cty. of Los*

*Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)).  In other words, the "mere lack of due care by a

state official does not deprive an individual of life, liberty, or property under the Fourteenth

Amendment."  *Id.* (internal quotations and citations removed).  Plaintiff must "prove more than

negligence but less than subjective intent—something akin to reckless disregard."  *Id.* (internal

quotations and citations removed); *see also James v. Lee*, -- F. Supp. 3d --, No. 16-cv-01592, 2020

WL 5500218, at *1 (S.D. Cal. Sept. 11, 2020); *Lucero-Gonzalez v. Kline*, 464 F. Supp. 3d 1078,

1091–92 (D. Ariz. 2020); *Fraihat v. U.S. Immigration & Customs Enf't*, 445 F. Supp. 3d 709, 742–

11

46 (C.D. Cal. 2020).

The Snohomish Defendants move for summary judgment, and oppose Plaintiff's Motion, arguing that they were unaware Plaintiff sustained any serious injuries and that, to the extent she required care, she received it.  Snohomish Mot. at 12–14; Resp. to Pl.'s Snohomish Mot. at 3–8. They allege that Plaintiff never informed any correctional officers of her injuries, that the officers would have been unable to observe any injuries during their welfare checks because of the safety smock and blanket provided her, and that she was seen by, and received care from, Nurse Sisawo and MHP Burns.

Plaintiff opposes summary judgment, and herself moves for summary judgment, arguing that the Snohomish Defendants would have had reason to know of her injuries because they were involved in the Booking Incident, causing the injuries in the first place, and because they would have observed her injured state over the next two days during their welfare checks.  Pl.'s Snohomish Mot. at 8–12; Resp. to Snohomish Mot. at 11–13.

The Court finds that there are sufficient questions of fact to preclude summary judgment for either party.  For example, Plaintiff presents her own depositional testimony that she begged numerous jail staff for medical attention after her assault.  *See* Decl. of Darryl Parker, Ex. B, Dkt. 77-1 at 45:7–10; 52:16–21 ("Dep. of Cheryl Bair").  The Snohomish Defendants respond that Plaintiff's depositional testimony is unclear as to which specific officers she claims she informed of her injuries.  *See, e.g.*, Resp. to Pl.'s Snohomish Mot. at 5–6; Dep. of Cheryl Bair at 52:16–54:3. They claim, therefore, they had no reason to know she was injured and in need of medical care above and beyond what she received.  The Court, however, notes that the Snohomish Defendants have put forward neither testimonial nor declaration evidence from the accused officers

12

disavowing having heard Plaintiff's cry for help. Thus, a credibility dispute exists between Plaintiff and the Snohomish Defendants regarding whether the former informed the later of her injuries, precluding summary judgment.

Further, the Snohomish Defendants claim they would not have been able to tell Plaintiff was injured based on her outward appearance. Plaintiff, however, points to the severe bruising noted by the Dawson Assault Center during her second visit to Providence Hospital. *See supra* at 6. The Snohomish Defendants claim that this bruising would have been hidden by the safety smock Plaintiff wore while on suicide watch. Based on the foregoing, the Court concludes there is a question of fact involving whether the Snohomish Defendants would have been able to tell Plaintiff was injured, regardless of whether she directly asked each for help.

Finally, the Snohomish County Defendants claim that, notwithstanding their alleged lack of knowledge of Plaintiff's injuries, their actions did not place Plaintiff in a "substantial risk of suffering serious harm" for two reasons; first because she received care from Nurse Sisawo and, second, because her injuries required only outpatient care once she arrived at Providence Hospital. *See* Reply to Snohomish Mot. at 6–7. Plaintiff responds that the Snohomish Defendants, having heard her pleas for help and observing her injuries, should have secured more substantial care than that provided by Nurse Sisawo and their failure to do so placed her in prolonged pain and suffering. *See* Pl.'s Snohomish Mot. at 11–12.

In the Deliberate Indifference context, a "serious harm" for the purpose of placing Plaintiff in "substantial risk of suffering serious harm" exists where "the failure to treat [the detainee's] condition 'could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Griepsma v. Anderson*, No. 19-cv-181, 2020 WL 6202670, at *2 (W.D. Wash. Oct. 22,

13

2020) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).  The Court finds there is an additional dispute of fact over whether, knowing or having reason to know of Plaintiff's injuries, the Snohomish Defendants should have obtained more substantial care for Plaintiff and whether their actions placed her in risk of further pain and injury.  The Court will, therefore, deny both parties' Motions as to this claim.

> 2. *Nurse Sisawo*

Both Plaintiff and Nurse Sisawo move for summary judgment on Plaintiff's Deliberate Indifference claim against Nurse Sisawo.  *See* Pl.'s Sisawo Mot. at 7–13; Sisawo Mot. at 8–22. The question of Nurse Sisawo's liability involves two issues: first, if he was, in fact, deliberately indifferent to Plaintiff's medical needs and, second, if he was, whether he is nevertheless entitled to qualified immunity for his actions.[6]

> a. *Deliberate Indifference*

Plaintiff argues that summary judgment is appropriate asserting there is no question of fact that Nurse Sisawo was deliberately indifferent to her medical needs, ignoring her pleas of pain and difficulty breathing, and not providing sufficient medical care.  Pl.'s Sisawo Mot. at 10–13; Pl.'s Opp'n to Def. Hamadi Sisawo's Mot. for Summ. J., Dkt. No. 101 at 7–17 ("Resp. to Sisawo Mot."). She also claims that Nurse Sisawo's failure to identify and treat her injuries, most acutely her fractured ribs, prolonged her suffering in Jail and increased the likelihood of more severe injuries by leaving her injuries unattended.

---

[6] The Snohomish Defendants have not raised qualified immunity as a grounds for dismissal.  *See generally* Snohomish Mot., Dkt. No. 64.

Nurse Sisawo moves for summary judgment, and contests Plaintiff's Motion, arguing that his care was sufficient.  Sisawo Mot. at 11–17; Def. Hamadi Sisawo's Resp. to Pl.'s Mot. for Partial Summ. J. against Def. Sisawo, Dkt. No. 99 at 11–15 ("Resp. to Pl.'s Sisawo Mot.").  He argues that he was not aware of Plaintiff's injuries having not been informed of the Booking Incident by either the corrections deputies or Plaintiff.  He further contends that he provided the appropriate care for the complaints Plaintiff did make, and that he neither caused her injuries nor exacerbated them given that he was not involved in the Booking Incident and that Plaintiff received only outpatient care from Providence Hospital once her injuries were documented.

Whether Nurse Sisawo's care amounted to Deliberate Indifference depends on his degree of awareness of the extent and nature of Plaintiff's injuries.  It is clear from the parties' submissions that there is a dispute of fact on this issue.  Plaintiff contends that she begged Nurse Sisawo for additional care and informed him of her extensive pain.  *See* Dep. of Cheryl Bair at 45:7–10.  Nurse Sisawo, on the other hand, contends that Plaintiff neither informed him of the Booking Incident assault nor of her subsequent injuries and that, when he offered her pain medication, she declined.  *See* Decl. of Emory Wogenstahl, Ex. A, Dkt. No. 96-1 at 68:12–19; 93:17–21 (Dep. of Hamadi Sisawo).  Thus, a dispute of fact exists over to what extent Nurse Sisawo knew or should have known Plaintiff was in need of care beyond what he provided.  Further, questions of fact surround the severity of her injuries and whether Nurse Sisawo's care placed her in "substantial risk of suffering serious harm."  *See supra* at 13–14.  The Court will deny summary judgment to both parties on this claim.

  b. *Qualified Immunity*

Notwithstanding the dispute over the level of care he provided.  Nurse Sisawo claims he is

15

entitled to qualified immunity.  In order to establish a claim under Section 1983, Plaintiff must show "she [(1)] suffered the deprivation of a federally protected right and that [(2)] the alleged deprivation was committed by a person acting under color of state law." *Sampson v. Cty. of Los Angeles by & through Los Angeles Cty. Dep't of Children & Family Servs.*, 974 F.3d 1012, 1018 (9th Cir. 2020) (quoting *Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020)).  Both parties recognize that Nurse Sisawo, while providing care under contract with the County, was acting under the color of state law.  Pl.'s Sisawo Mot. at 8; Sisawo Mot. at 17 (both citing *West v. Atkins*, 487 U.S. 42, 53–54 (1988); *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (per curiam)).

In a Section 1983 action, "qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson*, 974 F.3d at 1018 (internal quotations and citations removed).  This involves a two-part inquiry: whether (1) the plaintiff has plausibly alleged a violation of a constitutional right, and (2) the constitutional right was "clearly established" at the time of the conduct at issue.  *Id.* (citing *Wilk v. Neven*, 956 F.3d 1143, 1148 (9th Cir. 2020); *see also Sandoval*, 2021 WL 116539, at *10.

Nurse Sisawo argues that he is entitled to qualified immunity as he provided adequate care to Plaintiff, which did not fall below the standard of care required to provide to pre-trial detainees. Sisawo Mot. at 17–22; Resp. to Pl.'s Sisawo Mot. at 8–10.  Plaintiff argues that Nurse Sisawo is not entitled to qualified immunity because, by ignoring her substantial injuries, he violated the clearly established right of pre-trial detainees to sufficient medical care.  Pl.'s Sisawo Mot. at 9–10; Resp. to Sisawo Mot. at 17–19.

16

The right to appropriate medical care for pre-trial detainees has been clearly established. *See Gordon*, 888 F.3d at 1124; *Castro*, 833 F.3d at 1067–68.  The question in this case is whether the Snohomish Defendants and Nurse Sisawo's actions violated this clearly established constitutional right through their treatment of Plaintiff.  Thus, the same questions of fact which precluded summary judgment on the question of Nurse Sisawo's deliberate indifference also preclude a finding of qualified immunity.

### D.  Claim 3: *Monell* Claim

In *Monell v. Dep't of Soc. Servs. of N.Y.C.*, the Supreme Court held that local governments could be held liable under Section 1983 for customs or policies that result in constitutional deprivations.  436 U.S. 658, 694–95 (1978).  To establish municipal liability under *Monell*, Plaintiff must show (1) she was deprived of a constitutional right; (2) the municipality maintained a policy or practice; (3) the policy or practice amounted to deliberate indifference to her constitutional right; and (4) the policy or practice was the moving force behind the constitutional violation.  *Lockett v. Cty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)).  In order to establish that a municipality's policy or practice was the "moving force" behind a constitutional violation, Plaintiff must show "that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997); *see also Blackman v. Omak Sch. Dist.*, 466 F. Supp. 3d 1172, 1190–91 (E.D. Wash. 2020).

Plaintiff moves for summary judgment, arguing that the County's policies for providing medical care to those on suicide watch are deficient.  Pl.'s Snohomish Mot. at 12–14; Resp. to

Snohomish Mot. at 13–18. According to Plaintiff, the County fails to provide inmates who are placed on suicide watch with Snohomish County's Inmate Orientation Handbook, which contains instructions for inmates on how to submit formal requests for medical attention.

The County argues that it is entitled to summary judgment on Plaintiff's Deliberate Indifference-related *Monell* claim, and argues against summary judgment for Plaintiff, contending that its policies and training regarding medical care for inmates are adequate. Snohomish Mot. at 14–16; Resp. to Pl.'s Snohomish Mot. at 8–11. Further, the County claims that Plaintiff cannot show a causal connection between those policies and her injuries.

As established *supra*, there is a dispute of fact as to whether Plaintiff was deprived of her constitutional right to adequate medical care. *See supra* at 12–14. Additionally, it is uncontroverted by the parties that the County maintains a practice of not providing those on suicide watch with the Inmate Orientation Handbook, *see, e.g.*, Decl. of Darryl Parker, Ex. A, Dkt. No. 92-1 at 39:3-11 (Dep. of Lt. Ogawa stating that detainees receive the Handbook "when they're cleared" from the suicide watch), and that the Handbook contains instructions on how pre-trial detainees can submit formal requests for medical care, Inmate Orientation Handbook at 5 ("You must submit a medical kite, in writing, prior to being seen by medical staff."). The County's reason for not providing the Handbook to detainees on suicide watch is concern that the Handbook could be dangerous as it is bound with a staple, with which a detainee might hurt themselves, or a detainee may attempt to asphyxiate themselves on its pages. Resp. to Pl.'s Snohomish Mot. at 8–9.

The Court need not determine the advisability of the County's practice, however, because Plaintiff cannot establish that denial of the Handbook was the "moving force" behind the

18

constitutional violation of inadequate medical care she alleges.  It is uncontested that Plaintiff received some level of medical care as she was seen by Nurse Sisawo three times and MHP Burns at least once.  *See* Full Patient History at 75–76.  The lack of the Handbook, therefore, did not deprive her of medical care.  Plaintiff does not dispute that she received medical care but, rather, whether the care she did receive was adequate.  The Handbook in no way dictates levels of care, but merely demonstrates one way through which a pre-trial detainee may request medical attention. Plaintiff has failed to establish that the County's policy of not providing pre-trial detainees with the Handbook contributed to her alleged constitutional violation.  The Court will, therefore, grant the County's Motion for Partial Summary Judgment as to this claim and deny Plaintiff's Motion as to the same.

### E.  Claim 4: ADA and Rehabilitation Act Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  In order to establish a claim under the ADA, Plaintiff must show (1) she is an individual with a disability; (2) she is otherwise qualified to receive the County's services; (3) she was denied the benefits of the County's services or was otherwise discriminated against by the County; and (4) the denial of the services was by reason of the her disability.  *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018) (quoting *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014)).  To demonstrate a claim under the Rehabilitation Act, Plaintiff must establish the same elements and, therefore, the Court evaluates Plaintiff's claim under the ADA and the Rehabilitation Act simultaneously.  *McIntyre*, 976 F.3d at 912; *see also*

*Vos*, 892 F.3d at 1036.[7]

The County argues it is entitled to summary judgment—or that summary judgment in favor of Plaintiff is inappropriate—because she cannot show she was discriminated against based on her disability.  Snohomish Mot. at 16–17; Resp. to Pl.'s Snohomish Mot. at 11–13.  Plaintiff opposes summary judgment, and moves for summary judgment in her own right, arguing that she was denied medical care on account of her disability and, consequently, received neither medical treatment for her injuries nor the prescribed medication for her conditions.  Pl.'s Snohomish Mot. at 15–18; Resp. to Snohomish Mot. at 18–22.  Her argument is two-fold: first, that detainees on suicide watch are facially denied medical care because they do not receive the Handbook.  Second, that she was denied medical care based on her disability in that the Snohomish Defendants did not believe her cries for help because they knew she suffered from bipolar disorder and depression.

For the purpose of their Motions, the parties do not debate the first two ADA and Rehabilitation Act elements.  *See* Resp. to Pl.'s Snohomish Mot. at 12.  The ADA defines a "disability" as including a "mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A); *see also* 29 C.F.R. § 1630.2 (further defining "mental impairment").  Bipolar disorder is considered a mental impairment for this purpose if sufficiently severe.  *See Shim v. United Air Lines, Inc.*, No. 11-cv-00162, 2012 WL

---

[7] Additionally, a public entity can be held liable for damages under both the ADA and the Rehabilitation Act if "it intentionally or with deliberate indifference fail[ed] to provide meaningful access or reasonable accommodation to disabled persons."  *McIntyre*, 976 F.3d at 912 (quoting *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016)).  Deliberate indifference, in this context, entails "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood."  *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 469 (9th Cir. 2015) (quoting *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).

6742529, at *7 (D. Haw. Dec. 13, 2012) (citing *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1081 (10th Cir. 1997)).  Further, as established earlier, pretrial detainees are entitled to the benefit of medical care while incarcerated and, as such, it is considered a service for the purposes of the ADA and Rehabilitation Act.  *See supra* at 11; *see also Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).  As to the third element, whether Plaintiff was denied the benefit of medical services, as mentioned previously, there is a dispute of fact regarding whether the care Plaintiff received was adequate and met the relevant standards given the level of knowledge of correctional staff.

Plaintiff's claim founders, however, on the fourth element, whether she was excluded from care on account of her disability.  Plaintiff presents no evidence that her alleged denial of adequate care was based her disability.  First, as established *supra*, Plaintiff fails to show that she was denied care on account of not being provided with the Handbook.  *See supra* at 18–19.  Instead, as previously explained, her claim is to a lack of sufficient care, not whether she received care in the first place.  Again, the evidence establishes that Plaintiff was provided some level of medical attention, the question remaining is whether that attention was sufficient.

Second, Plaintiff presents no evidence that the Snohomish Defendants failed to provide her adequate care based on her disability.  Her claim that the Snohomish Defendants ignored her pleas for help based on disbelief stemming from her bipolar disorder and depression amounts to no more than speculation as to the potential motivations of the County staff.  Plaintiff presents neither concrete nor circumstantial evidence to support her claim of neglect based on disability.

The Court will grant the County's Motion as to Plaintiff's ADA and Rehabilitation Act claim and deny Plaintiff's Motion as to the same claim.

21

### F.  Claim 5: Equal Protection

#### 1.  _Snohomish Defendants_

The Equal Protection Clause requires that "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." _City of Cleburne, Tex. v. Cleburne Living Ctr._, 473 U.S. 432, 439 (1985) (quoting _Plyler v. Doe_, 457 U.S. 202, 216 (1982)).  To state an Equal Protection claim under Section 1983, Plaintiff must show "the defendants acted with an intent or purpose to discriminate against [her] based upon membership in a protected class." _Sampson v. Cty. of Los Angeles by & through Los Angeles Cty. Dep't of Children & Family Servs._, 974 F.3d 1012, 1022 (9th Cir. 2020) (quoting _Lee v. Cty. of Los Angeles_, 250 F.3d 668, 686 (9th Cir. 2001)).

The Snohomish Defendants arguments mirror their arguments opposing Plaintiff's ADA and Rehabilitation Act claim, that is, they are entitled to summary judgment on Plaintiff's Equal Protection claim because Plaintiff cannot show she was deliberately treated differently on the basis of her mental disability.  Snohomish Mot. at 18–19.[8]  In response, Plaintiff reiterates her ADA and Rehabilitation Act arguments, asserting that she was denied medical care—and equal treatment—because the Snohomish Defendants did not take her cries for help seriously because they knew her to suffer from bipolar disorder and depression.  Resp. to Snohomish Mot. at 22–24.

As establish previously, Plaintiff has failed to show that the lack of care provided by the Snohomish Defendants was based on her disability.  _See supra_ at 21.  Her claim that County staff

---

[8] Plaintiff does not cross-move for summary judgment on her Equal Protection claims.  _See generally_ Pl.'s Snohomish Mot., Dkt. No. 91.

failed to heed her pleas for help on account of her disability rests on speculation as to possible motivations backed by neither concrete nor circumstantial evidence.  As such, the Court will grant the Snohomish Defendant's Motion on this claim.

   2.  *Nurse Sisawo*

   Similar to the Snohomish Defendants, Nurse Sisawo also seeks summary judgment on Plaintiff's Equal Protection claim.[9, 10]  He argues that summary judgment is appropriate because, similar to his previous arguments, he provided Plaintiff sufficient care given his level of knowledge of her injuries.  Reply to Sisawo Mot. at 21.

   As the Court has already determined, there is a dispute of fact regarding whether Plaintiff received adequate medical care from Nurse Sisawo.  *See supra* at 14–15.  As indicated *supra*, however, Plaintiff presents no more than speculation regarding possible motivation behind her allegation that Nurse Sisawo provided insufficient care because of Plaintiff's bipolar disorder.  She presents neither concrete nor circumstantial evidence that Nurse Sisawo treated her differently than other similarly situated pre-trial detainees, let alone that any alleged different treatment was based on her mental disability.  As such, the Court will grant Nurse Sisawo's Motion for Partial Summary Judgment as to this claim.

---

[9] Nurse Sisawo's Motion for Summary Judgment originally did not seek judgment on Plaintiff's Equal Protection claim.  *See generally* Sisawo Mot., Dkt. No. 95.  Plaintiff raised this deficiency in her Response to the Motion, *see* Resp. to Sisawo Mot. at 22, to which Nurse Sisawo's Reply stated his intent to move for judgment on this claim, *see* Reply in Support of Def. Hamadi Sisawo's Mot. for Summ. J., Dkt. No. 114 at 21 ("Reply to Sisawo Mot.").  The Court permitted Plaintiff to file a Surreply to answer Nurse Sisawo's claim.  *See* Pl.'s Surreply to Def. Hamadi Sisawo's Reply in Support of Mot. for Summ. J., Dkt. No. 119.  As such, the Court considers Nurse Sisawo's claim for summary judgment to be fully briefed and properly before the Court.

[10] Plaintiff does not cross-move for summary judgment on her Equal Protection claim against Nurse Sisawo.  *See generally* Pl.'s Sisawo Mot., Dkt. No. 87.

### G. Claim 6: Negligence

#### 1. *Snohomish County*

The Snohomish Defendants move for summary judgment on Plaintiff's common law Negligence claim arguing that she failed to timely file a statutorily required Claim for Damages Form with the County.  Snohomish Mot. at 20–21.  Plaintiff argues she substantially complied with the filing requirement and moves for summary judgment in her own right on her Negligence claim against the County.  Pl.'s Snohomish Mot. at 20–21; Resp. to Snohomish Mot. at 24–25.

Washington's municipality claim filing statue requires claimants to file a Claim for Damages Form.  WASH. REV. CODE § 4.96.010(1).  The Statute further requires that the Form be filed at least sixty days before commencing a suit.  WASH. REV. CODE § 4.96.020(4) ("No action subject to the claim filing requirements of this section shall be commenced against any local governmental entity . . . for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim has first been presented to the agent of the governing body thereof.").  The purpose of the waiting period is to provide the municipality with an opportunity to investigate, evaluate, and potentially settle claims.  *Lee v. Metro Parks Tacoma*, 335 P.3d 1014, 1016–17 (Wash. Ct. App. 2014).

Plaintiff commenced this action by filing her original Complaint in the Snohomish County Superior Court on May 24, 2019.  Notice of Removal ¶ 1.  She did not file her Claim for Damages Form with the County until July 29, 2019. Decl. of Katherine Bosch, Ex. L, Dkt. No. 65 at 173–78 (Claim for Damage Form).  Filing the Claim for Damage Form *after* commencing suit does not conform to the statutory requirements.  The Court will grant the County's Motion for Partial Summary Judgment on this claim and deny Plaintiff's Motion as to the same claim.

2.  *Snohomish Defendants*

As to the Snohomish Defendants, Washington's claim filing statute extends its protections to County employees, but only when acting in their professional capacities.  *See* WASH. REV. CODE § 4.96.020(1) ("The provisions of this section apply to claims for damages against all local governmental entities and their officers, employees, or volunteers, acting in such capacity."); *Id.* at § 4.96.020(4) ("No action . . . shall be commenced against . . . any local governmental entity's officers, employees, or volunteers, acting in such capacity . . ..").

A County employee acts within the scope of employment, for example, when they are performing duties for which they are employed or are reasonably incidental to their duties.  *See Melin-Schilling v. Imm*, 205 P.3d 905, 908 (Wash. Ct. App. 2009) (citing *O'Shea v. Welch*, 350 F.3d 1101, 1103 (10th Cir. 2003)); *see also Cronk v. City of W. Richland*, No. 4:14-cv-5041, 2015 WL 853863, at *2 (E.D. Wash. Feb. 26, 2015) (quoting *Robel v. Roundup Corp.*, 59 P.3d 611, 621 (Wash. 2002) ("In Washington, '[a]n employee's conduct will be outside the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'")).  At the same time, a County employee is not within their scope of employment when committing an intentional tort or civil rights violation.  *See Wright v. Terrell*, 145 P.3d 1230, 1240 (Wash. Ct. App. 2006), *rev'd*, 170 P.3d 570 (Wash. 2007) (citing *Woods v. Bailet*, 67 P.3d 511, 515–16 (Wash. Ct. App. 2003); *Hardesty v. Stenchever*, 917 P.2d 577, 581 (Wash. Ct. App. 1996)).

Here, Plaintiff's cause of action is for Negligence.  While it is clear from precedent that Washington's claim filing statute does not reach to bar Plaintiff's federal Section 1983 actions, *see Wyant v. City of Lynnwood*, 621 F. Supp. 2d 1108, 1111 (W.D. Wash. 2008) (citing *Wright*, 170

P.3d at 570), Negligence is neither an intentional tort nor a state civil rights statute.  Further, Plaintiff has made no claim that the relevant correctional officers were acting outside the scope of their duty.  The Court finds that Plaintiff's failure to comply with Washington's claim filing statute also bars her Negligence claim against the individual Snohomish Defendants.

   3.   *Nurse Sisawo*

Nurse Sisawo has not sought dismissal for Plaintiff's failure to comply with Washington's claim filing statute.  Therefore, the holding above regarding Plaintiff's failure to comply with the statute's requirements does not resolve Plaintiff's Negligence claim against Nurse Sisawo

Instead, Plaintiff and Nurse Sisawo cross-move for summary judgment based on the merits of Nurse Sisawo's care for Plaintiff while she was in jail.  *See* Pl.'s Sisawo Mot. at 13–18; Resp. to Pl.'s Sisawo Mot. at 15–16; Sisawo Mot. at 22–23; Resp. to Sisawo Mot. at 20–22.  As this claim involves evaluation of the standard of medical care Nurse Sisawo provided, Plaintiff's claim sounds as one for Medical Negligence, which is provided for in Washington's Actions for Injuries Resulting from Health Care statute.  *See* Wash. Rev. Code § 7.70, *et seq*.  In order to establish a claim based on injury from a failure to follow accepted medical standards of care, Plaintiff must show:

> (1) [t]he health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances; (2) [s]uch failure was a proximate cause of the injury complained of.
>
> Wash. Rev. Code § 7.70.040; *see also Paetsch v. Spokane Dermatology Clinic, P.S.*, 348 P.3d 389, 393 (Wash. 2015) ("The elements of medical negligence . . . are duty, breach, causation, and harm.").

Here, the same dispute of facts regarding Nurse Sisawo's care which precluded summary

judgment on Plaintiff's Deliberate Indifference claim also preclude summary judgment on her Negligence claim. *See supra* at 14–15. As such, the Court will deny both Plaintiff and Nurse Sisawo's Motions on this claim.

**V.     CONCLUSION**

For the foregoing reasons, the Court hereby rules as follows:

(1) Summary Judgment on Plaintiff's claim for Deliberate Indifference against the Snohomish Defendants is DENIED;

(2) Summary Judgment on Plaintiff's claim for Deliberate Indifference against the Nurse Sisawo is DENIED;

(3) Summary Judgment on Plaintiff's Deliberate Indifference-related *Monell* claim against the County is GRANTED on behalf of the County and the claim is hereby DISMISSED;

(4) Summary Judgment on Plaintiff's ADA and Rehabilitation Act claim against the County is GRANTED on behalf of the County and the claim is hereby DISMISSED;

(5) Summary Judgment on Plaintiff's Equal Protection claim against the Snohomish Defendants is GRANTED on behalf of the Snohomish Defendants and the claim is hereby DISMISSED;

(6) Summary Judgment on Plaintiff's Equal Protection claim against Nurse Sisawo is GRANTED on behalf of Nurse Sisawo and the claim is hereby DISMISSED;

(7) Summary Judgment on Plaintiff's Negligence claims against the County and the Snohomish Defendants is GRANTED on behalf of the County and the Snohomish Defendants and the claim is hereby DISMISSED;

(8) Summary Judgment on Plaintiff's Negligence claim against Nurse Sisawo is hereby DENIED;

(9) Nurse Sisawo's Motion to Exclude Opinions and Testimony of Alexis Telles is hereby HELD IN ABEYANCE; and

(10)    Plaintiff's Motion to Strike exhibits is DENIED.

As the Court previously suspended all deadlines pending issuance of this Order, Min.

Order, Dkt. No. 120, the Court hereby ORDERS the parties to confer and submit a joint proposed schedule for the remaining Court deadlines including Motions in Limine, Joint Pretrial Statement, Pretrial Conference, and Trial.  The parties shall submit their joint proposed schedule no later than fourteen (14) days from the date of this Order.


        DATED this 2d day of February, 2021.


                                            _____
                                            BARBARA J. ROTHSTEIN
                                            UNITED STATES DISTRICT JUDGE